**UNITED STATES of America, Appellee,**

v.

**Fatimah BICE–BEY, Appellant.**

**No. 82–5180.**

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 12, 1982.

Decided Feb. 25, 1983.

Rehearing Denied March 31, 1983.

---

Elizabeth F. Kuniholm, Durham, N.C. (Tharrington, Smith & Hargrove, Raleigh, N.C., on brief), for appellant.

James G. Lindsay, Dept. of Justice, Washington, D.C. (Samuel T. Currin, U.S. Atty., Raleigh, N.C., on brief), for appellee.

Before RUSSELL and ERVIN, Circuit Judges, and GORDON,* Senior District Judge.

ERVIN, Circuit Judge:

Fatimah Bice-Bey appeals her conviction for violation of 15 U.S.C. § 1644(a) (1982). A jury found her guilty of two counts of credit card fraud after a trial that, she contends, was marred by numerous errors. In addition, Bice-Bey advances a reading of the statute that would absolve her of criminal liability under it. We find no prejudicial error in her trial and, although the issue is close, cannot agree with her interpretation of the statute. We affirm her conviction.

I.

During December of 1981, Oak Park Electronics, a Raleigh firm, received a number of very similar telephone orders for electronic equipment. The orders were all charged to credit card numbers and were requested to be shipped by Federal Express overnight to the New York area.[1] After the seventh such order, for almost $5,000 in merchandise, was received on December 28 from a person identifying herself as "Jane Johnson," Oak Park contacted the FBI, which arranged for subsequent telephone orders from New York to be recorded. On December 29, "Johnson" called to confirm her order; the conversation was taped.

On December 30, a man identifying himself as "Joe Johnson" attempted to place an order for over $2,000 in video equipment, to be sent to the address in Manhattan given two days earlier by "Jane Johnson." When informed that his order exceeded the limits on the credit card accounts he proffered, the man abruptly hung up. Oak Park immediately received another call from a woman who identified herself as "Jane Johnson," the December 28 customer and the wife of "Joe Johnson." She placed a smaller order using the same credit card number proffered on December 28 and by "Joe Johnson" in the earlier December 30 call.

Later in the day on December 30, FBI agents posing as Federal Express employees delivered the December 28 order to the designated address, Apartment B–1, 38 Edgecombe Avenue, Manhattan. Bice-Bey accepted delivery, although she stated that she was not "Johnson" and signed the Federal Express form with the name "Cadabra." The agents then arrested Bice-Bey and William Simmons, the resident of Apartment B–1.

Bice-Bey was indicted by a grand jury for two counts of credit card fraud, based on the December 28 order, and one count of conspiracy to engage in credit card fraud. Simmons also was indicted for these offenses, but the charges were later dismissed, and a superseding indictment against Bice-Bey only was filed.

At the trial, the government's witnesses identified "Jane Johnson's" voice on the tape-recorded December 30 telephone call as that of Bice-Bey. A bank employee testified that the credit card numbers used on December 28 by "Jane Johnson" were in fact those of a Suzanne Matthews and an Edward Bernstein, and that all of the charges on the orders made prior to that date were charged back to Oak Park because the cardholders denied making the

* Honorable Eugene A. Gordon, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.

1. Orders were placed on December 7, 10 and 22 by "George Jefferson," on December 11 and 16 by "Sharon Smith," and on December 21 by "John Smith." "Jefferson" and "John Smith" used the same credit account numbers; "Sharon Smith" a different set. None of the numbers matched those used in the later incidents. There were various links between these orders and that for which Bice-Bey was indicted: the December 11 order was delivered to an address next door to Bice-Bey's mother's apartment; the December 16 order was picked up at a Federal Express office by a woman generally matching Bice-Bey's description; a woman later identified positively as Bice-Bey attempted to pick up the December 21 order but was rebuffed when she failed to produce proper identification, whereupon she left in a huff; and the account numbers used in the December 21 order were also used by "Jefferson" on December 7, 10, and 22.

charges. Bernstein specifically testified that he had never lost or loaned his credit card and had never authorized anyone to use his number to order anything from Oak Park. Bice-Bey testified that she did not know either Bernstein or Matthews. The district court also permitted the introduction of a polygraph examination to which Bice-Bey had agreed. The polygraph examiner testified that in his opinion Bice-Bey's answers to questions concerning her involvement in the credit card orders indicated deception.

Bice-Bey's trial defense was that her participation in the credit card transactions was limited to accepting the package on December 30, and that her actions then were made on behalf of someone else without knowledge of any illegality.[2]

## II.

On appeal, Bice-Bey raises a number of issues regarding the admissibility of evidence. She argues that once the district court ordered her acquittal on the conspiracy count, it should have excluded the government's evidence concerning the credit card transactions that took place before December 28. The government contends that the evidence was still admissible under Federal Rule of Evidence 404(b), which permits the admission of "extrinsic act" evidence for relevant purposes other than to "prove" the defendant's bad character. We agree.

In *United States v. Johnson,* 634 F.2d 735, 737 (4th Cir.1980), *cert. denied,* 451 U.S. 907, 101 S.Ct. 1974, 68 L.Ed.2d 295 (1981), we held that, in admitting extrinsic act evidence, the district court "first must determine if the proffered evidence is relevant to an issue other than the accused's character. If so, then the trial judge must balance the evidence's probative value against the danger of undue prejudice aroused by this form of evidence." The 404(b) evidence in *Johnson* was held admissible by this court because it tended to rebut the defendant's claim that she lacked the *mens rea* necessary to commit the crime with which she was charged. *Id.* at 737–38. Similarly, in this case the evidence about the pre-December 28 transactions tended to undermine Bice-Bey's claim that her involvement in the December 28 order, for which she was charged, was innocent and inadvertent. Furthermore, although this evidence was clearly damaging to Bice-Bey, we cannot say that it was so prejudicial that there was an abuse of discretion in its admission. *See United States v. Brugman,* 655 F.2d 540, 545 (4th Cir.1981) ("wide discretion" vested in trial court to balance possible prejudice against probative force in 404(b) rulings).

According to Bice-Bey, the identification testimony offered by government witness Kollen Maloney was inadmissible. Maloney was the Federal Express employee who refused to release the order placed on December 21 to a woman lacking proper identification. She identified Bice-Bey as that woman when showed six photographs by the police. This photo spread was impermissibly suggestive, in Bice-Bey's view, because only one of the photographs portrayed a woman with dred locks and wearing a head covering. But while this procedure was somewhat suggestive,[3] we do not believe that it transgressed the limits set by the Supreme Court in *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). *Manson* rejected the position that the suggestiveness of an identification procedure renders the testimony produced inadmissible *per se.* The Supreme Court stated that "reliability is the linchpin in determining the admissibility of identifica-

---

**2.** At the close of the government's evidence Bice-Bey moved for acquittal on all counts. The district court denied her motion as to one of the substantive counts and reserved its ruling on the other substantive count and the conspiracy count. At the close of her evidence, the court granted her motion as to the conspiracy count. The court then denied Bice-Bey's motion to exclude the evidence of the earlier credit card transactions.

**3.** We agree with Bice-Bey that, in light of the fact that Maloney remembered the woman's appearance as unusual, it was suggestive to show Maloney only one photograph, that of Bice-Bey, portraying a woman with dred locks and a head covering.

tion testimony," *id.* at 114, 97 S.Ct. at 2253, and that courts should consider "the opportunity of the witness to view the criminal.... the witness' degree of attention, the accuracy of the prior description of the criminal, the level of certainty demonstrated ... and the time between the crime and the [identification, discounted by] the corrupting effect of the suggestive identification itself." *Id.* The weight of these factors is in the government's favor: Maloney was presumably engaged in close observation of the woman who attempted to pick up the package, and her attention must have been fixed further by the woman's angry exit. Her description of the woman prior to being shown the photo spread was accurate in a general way. The level of certainty she demonstrated in making the identification was high, and she did so within a short period after making her personal observation.

■ Bice-Bey also attacks the admission of testimony by FBI agents that the taped voice of "Jane Johnson" was identical to her own. This contention is without merit. Federal Rule of Evidence 901(b)(5) permits the identification of a recorded voice "by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker." The FBI agents clearly met this standard. Furthermore, that this opinion evidence embraced an ultimate issue of fact to be decided by the jury—whether Bice-Bey in fact made the telephone calls placing the fraudulent orders—does not make the evidence objectionable. *See* Fed.R.Evid. 704.

### III.

We must reject Bice-Bey's contention that the government's evidence cannot support the jury's guilty verdict on count one of the indictment. That count charged Bice-Bey with obtaining goods worth over $1,000 through fraudulent use of a VISA card issued to Suzanne Matthews of New York City. Although Edward Bernstein,

holder of the Master Card Bice-Bey was charged with using by count two, testified that he did not authorize Bice-Bey to use his card, Matthews did not testify. The government argues that the evidence indicating that Bice-Bey used the Matthews card under a false name ("Jane Johnson") permitted the jury to infer unauthorized use of the card. Furthermore, Bice-Bey herself testified that she did not know Suzanne Matthews, and that she had no authorization to use anyone else's credit cards, admissions which permit a rational fact finder to conclude beyond reasonable doubt that if Bice-Bey used Matthews' card, she did so without Matthews' permission. Given our narrow scope of review for sufficiency of the evidence,[4] this court should not disturb the jury's verdict on this ground.

### IV.

■ Bice-Bey contends that the district court's failure to rule on her motion for acquittal as to counts one and three (the conspiracy count and one of the substantive counts) at the close of the government's evidence was error. She further asserts that she was prejudiced by the error by being forced to determine whether to present evidence before receiving a ruling on her motion. The government points out that the district court denied her motion as to count two (the other substantive count), and that the evidentiary links between that count and the other two were so extensive that her choice as to whether to present evidence could not have been influenced by the court's refusal to rule at once on the motion as to counts one and three. The only concrete prejudice to which Bice-Bey can point is the introduction of the polygraph examination, which (as the government notes) was not used to establish the elements of the charged offense but to impeach Bice-Bey's testimony.

Bice-Bey is correct that the district judge erred in reserving his decision on her acquittal motion. *See, e.g., United States v.*

---

4. "[W]hether, viewing the evidence in the light most favorable to the government, *any* rational trier of facts could have found the defendant

guilty beyond a reasonable doubt." *United States v. Tresvant,* 677 F.2d 1018, 1021 (4th Cir.1982) (emphasis in original).

*Conway,* 632 F.2d 641, 643 (5th Cir.1980). But this court has held that such error is not prejudicial "where the government's evidence at the time motion for acquittal is made is sufficient to present a jury question as to defendant's guilt." *United States v. Godel,* 361 F.2d 21, 24 (4th Cir.1966), *cert. denied,* 385 U.S. 838, 87 S.Ct. 87, 17 L.Ed.2d 72 (1966), *accord, United States v. Cook,* 586 F.2d 572, 576 (5th Cir.1978), *cert. denied,* 442 U.S. 909, 99 S.Ct. 2821, 61 L.Ed.2d 274 (1979). At the close of its case, the government's evidence presented such a jury question; hence we conclude that the error was harmless.

## V.

Bice-Bey contends that she was denied her sixth amendment right to counsel because of her lawyer's incompetence. She bases this claim on his role in persuading her to continue with the polygraph examination after she had become angry and upset. However, the record does not support Bice-Bey's characterization of the relevant events. She had agreed to a stipulation making the polygraph results admissible no matter what the results, a stipulation which the trial court rejected, ruling instead that the results would be admitted only if Bice-Bey decided to testify herself, which she did. When the polygraph examiner decided to terminate the procedure because of her emotional state, Bice-Bey became angry and demanded "why can't you give me the exam?" On direct examination by her own counsel, Bice-Bey stated that she "did want to try to take it originally" and that even after her angry outburst she had said "I'll take it because that's what I had asked for." In light of the record, it does not seem possible to reach the conclusion—necessary to support her constitutional claim—that Bice-Bey's trial counsel's behavior in connection with the polygraph examination was an error resulting "from neglect or ignorance rather than from informed, professional deliberation." *Marzullo v. Maryland,* 561 F.2d 540, 544 (4th Cir. 1977), *cert. denied,* 435 U.S. 1011, 98 S.Ct. 1885, 56 L.Ed.2d 394 (1978).

## VI.

Section 1644(a) of Title 15 of the United States Code imposes criminal liability on any person who

> knowingly in a transaction affecting interstate or foreign commerce, uses or attempts or conspires to use any counterfeit, fictitious, altered, forged, lost, stolen, or fraudulently obtained credit card to obtain money, goods, services, or anything else of value which within any one-year period has a value aggregating $1,000 or more.

Bice-Bey contends that she could not be convicted under this statute because the government failed utterly to show that she made any use whatsoever of a credit card—as opposed to a credit card number—or that she obtained the numbers by theft or fraud rather than in some lawful manner. Because her conduct does not come literally within the statutory language, she asserts that the statute does not reach her alleged activities.

As Bice-Bey points out, it *is* difficult to fit her actions within the statute's wording. The government did not claim that she obtained possession by fraud or theft of the credit cards, the account numbers of which she allegedly utilized in placing orders with Oak Park Electronics. Nor did the government seek to prove that the cards had been lost or stolen. Indeed, the holder of one of those cards testified that the card remained within his control at all relevant times. *A fortiori,* Bice-Bey made no use of a plastic credit card which was "counterfeit, fictitious, altered [or] forged."

Bice-Bey derives additional comfort from the definition given "credit card" in 15 U.S.C. § 1602(k) (1982):

> The term "credit card" means any card, plate, coupon book or other credit device existing for the purpose of obtaining money, property, labor, or services on credit.

This provision makes it clear, in her view, that section 1644 is concerned with the misappropriation and misuse of the plastic card itself and not of the credit account number

to which the card witnesses. Her reading of that section, furthermore, has been adopted by the Ninth Circuit in *United States v. Callihan,* 666 F.2d 422 (1982).

This argument is not without merit. We are conscious of the fundamental rule that criminal statutes are to be construed strictly and that we must not extend by "interpretation" the outer limits on criminal liability set by Congress. *See Dunn v. United States,* 442 U.S. 100, 112, 99 S.Ct. 2190, 2197, 60 L.Ed.2d 743 (1979) (restating the Supreme Court's "long-established practice of resolving questions concerning the ambit of a criminal statute in favor of lenity").[5] But we are mindful also of our obligation not to defeat the congressional purpose in creating a federal crime. *See Barrett v. United States,* 423 U.S. 212, 218, 96 S.Ct. 498, 502, 46 L.Ed.2d 450 (1976).

In this case we believe that Bice-Bey's suggested reading of the statute is overliteralistic. It is just as possible to go astray by being a fundamentalist about the letter of statutory language as by being too liberal in construing it. The core element of a "credit card" is the account number, not the piece of plastic. As this case illustrates, the "credit card" can be used over the telephone without the seller ever seeing the plastic card itself. The credit numbers Bice-Bey used were not hers and she had no authorization to use them. If she obtained them by ascertaining secretly the numbers belonging to Matthews and Bernstein, she was in effect stealing or fraudulently obtaining the essential element of the cards. In any event, by representing credit card numbers belonging to other persons as credit accounts belonging to "Jane Johnson," Bice-Bey was using a fictitious "credit device"[6] in violation of the statute. To hold otherwise would be, in our view, to defeat the plain intent of Congress in enacting this statute.[7]

## VII.

We find no reversible error in the conduct of Bice-Bey's trial. Furthermore, although the question is close, and perhaps needs resolution by a higher tribunal, we disagree with Bice-Bey's reading of 15 U.S.C. § 1644(a) and hold that the government's evidence permitted the jury to find her liable under the statute. Bice-Bey's conviction, therefore, is affirmed.

AFFIRMED.

---

5. This canon of lenity, which should be employed only when there is ambiguity in a criminal statute, *Callanan v. United States,* 364 U.S. 587, 596, 81 S.Ct. 321, 326, 5 L.Ed.2d 312 (1961), has important constitutional underpinnings, both in the "fundamental principles of due process," *Dunn,* 442 U.S. at 112, 99 S.Ct. at 2197, and in the limited character of the federal government, *see United States v. Hudson & Goodwin,* 11 U.S. (7 Cranch) 32, 3 L.Ed. 259 (1812) (federal courts may not exercise common law jurisdiction in criminal cases).

6. *See* 15 U.S.C. § 1602(k).

7. The legislative "history" of section 1644 is almost nonexistent. *See* [1970] U.S.Code Cong. & Adm.News 4411, 4414. Ambiguity in the statutory text can only be resolved, therefore, by reference to "the mischief and defect" Congress sought to cure. *See Heydon's Case,* 3 Co.Rep. 7a (Ex.1584) ("the office of all the Judges is always to make such construction as shall suppress the mischief"), *quoted in* L. Fuller, *The Morality of Law* 83 (rev. ed. 1969). It is patently unreasonable to conclude that Congress intended to penalize the misuse of credit accounts where the plastic card bearing the account number is used and not when the account number is used in a transaction by telephone. *See American Tobacco Co. v. Patterson,* 456 U.S. 63, 75–77, 102 S.Ct. 1534, 1541, 71 L.Ed.2d 748, 756–57 (1982) ("Statutes should be interpreted to avoid untenable distinctions and unreasonable results whenever possible.")