UNITED STATES of America,
Plaintiff–Appellant,

v.

Grace Ann SHEEK, Defendant–Appellee,

and

John Gordon Wallace, Sherri Lynn
Wallace, Stephen Thomas
Porto, Defendants.

No. 92–5278.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 3, 1992.

Decided March 30, 1993.

William Earl Day, II, Asst. U.S. Atty., Florence, SC, argued (John S. Simmons, U.S. Atty., on brief), for plaintiff-appellant.

Karen Newell Fryar, Columbia, SC, argued (Jack B. Swerling, on brief), for defendant-appellee.

Before RUSSELL and HALL, Circuit Judges, and MORGAN, District Judge for the Eastern District of Virginia, sitting by designation.

## OPINION

MORGAN, District Judge:

Appellee, Grace Ann Sheek was indicted, along with several others, on three counts relating to the August 1991 kidnapping of her two natural children, Amanda and Michael York, and their subsequent transportation across state lines. The indictment alleged that Sheek conspired to kidnap and transport the two children in interstate commerce in violation of 18 U.S.C. §§ 1201, 924(c)(1) and 371, that she kidnapped and transported the two children from South Carolina to Missouri between August 17 and 21, 1992 for the purpose of depriving Sollie and Mary Floyd of lawful custody in violation of 18 U.S.C. §§ 1201–02, and that a firearm was used in connection with the kidnapping in violation of 18 U.S.C.

§ 924(c)(1) and (2).[1] On February 14, 1992, a hearing was held on various motions to dismiss the indictment. By Order dated March 10, 1992, the district court dismissed the three counts applicable to Sheek upon the grounds that she was exempted from liability by virtue of her status as the parent of the two children. The United States appeals the dismissal.[2]

## I.

There is no dispute that Sheek is the biological mother of the two children. The government established that in November of 1987, the South Carolina Department of Social Services (SCDSS) removed the children from the custody of the Defendant and placed them in the care of the Floyds who were licensed foster parents. In November of 1989, a South Carolina family court issued an Order wherein the parental rights of the Defendant were permanently terminated.[3] At the time of the abduction the SCDSS had full custody of the children, although the children were living with the Floyds who were pursuing adoption. The government alleges that the defendants travelled from Missouri to South Carolina in August of 1992 and abducted the children through the use of force, violence and intimidation upon the Floyds. The defendants threatened the Floyds with a .22 calibre handgun and robbed them of over $5000 in cash.

In its Order, the district court ruled that it was dismissing the indictment as to Sheek because the federal statute excluded "parents" from criminal liability. The government argued that Sheek was not a "parent" within the meaning of the statute because her parental rights had been permanently terminated. Finding that the plain meaning of the statutory term "parent" encompassed a biological parent, the court reasoned that the termination of parental rights at the hands of a state court does not affect whether the biological mother is criminally liable under the federal law. This Court concurs with this reasoning, and the judgment of the district court is affirmed.

## II.

### A. *Statutory Construction*

■ The statute at issue is the Federal Kidnapping Act. 18 U.S.C.S. §§ 1201 *et seq.* (Law Co-op 1992 Supp.) [hereinafter the "Act"].[4] In pertinent part it reads:

Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts or carries away and holds for ransom or reward or otherwise any person, *except in the case of a minor by the parent thereof,* when ... the person is willfully transported in interstate or foreign commerce ... shall be punished by imprisonment for any term of years or for life.

18 U.S.C.S. § 1201(a) (emphasis added). There have been two amendments to the Act which shed light on the issue at hand. As originally enacted, the statute was worded to impose criminal liability only for kidnappings which were committed for "ransom or reward." There was no explicit reference to a kidnapping by a parent. The Act was first amended in 1934 to expand liability to kidnappings "for ransom or reward *or otherwise ... except in the case of a minor by a parent.*" An amendment passed in 1990 also addressed "parents." It established a special rule provid-

---

**1.** Count Four was brought solely against one of her co-conspirators for possession of a firearm after having been convicted of a felony.

**2.** The court denied the motions as to the remaining three defendants. The court subsequently granted a motion made by the government to dismiss as to one of the defendants, and the other two pled guilty to the non-conspiracy counts.

**3.** The facts surrounding the termination of Sheek's parental rights amply justify that action.

The family court found evidence relating to physical abuse and neglect of both children by the Defendant and her husband. There was evidence of sexual abuse by the husband of his stepdaughter, Amanda. Joint Appendix at 16–18. The court also found that the Defendant had made no effort to maintain a bond with her children after they were placed in foster care and, at the time of the final hearing, she was incarcerated in Florence, South Carolina.

**4.** It is often called the Lindbergh Act, enacted at least in part due to the infamous Lindbergh baby kidnapping of that era.

ing enhanced sentences when children are kidnapped and listed certain family mem-. bers as being exempt from its provisions.

> If ... the victim of an offense under this section has not attained the age of eighteen years; and ... the offender ... has attained such age; and ... is not (I) *a parent;* (II) a grandparent; (III) a brother; (IV) a sister; (V) an aunt; (VI) an uncle; or (VII) an individual having legal custody of the victim; the sentence under this section for such offense shall be subject to [statutorily prescribed enhancement of sentence under the Federal Sentencing Guidelines].

18 U.S.C.S. § 1201(g) (Law Co-op 1992 & Supp.) (emphasis added).

The government does not dispute that the Act was always intended to exempt parents under the law. There is ample precedent compelling this conclusion. The original wording "for ransom or reward" was intended to exclude kidnappings by parents because such acts, it was assumed, were not undertaken for remunerative gain. *United States v. Boettcher,* 780 F.2d 435, 436 (4th Cir.1985). As this Court has previously observed, the legislative history bears out this conclusion. In the House debate on the bill in 1932, Chairman Dyer stated that "[t]here is not anybody who would want to send a parent to the penitentiary for taking possession of his or her own child, even though the order of the court was violated and it was a technical kidnapping." 75 Cong.Rec. 13,296 (1932). *See also Boettcher,* 780 F.2d at 436, n. 3.

The 1934 amendment was enacted to clarify the "ransom or reward" provision by bringing into the purview of the statute such kidnappings as are done to secure something other than monetary benefit. *Gooch v. United States,* 297 U.S. 124, 128, 56 S.Ct. 395, 397, 80 L.Ed. 522 (1936). Having added the words "or otherwise" in or-der to accomplish this goal, it became necessary to expressly state the parental exception. The statute was passed to "enlarge ... and clarify its purpose." *Gooch,* 297 U.S. at 126–27, 56 S.Ct. at 396–97.

Noting that the term "parent" is not defined, the government argues that it is ambiguous as used in the statute. In support of this contention, the government points to the 1990 amendment in which Congress found it necessary to expressly exempt parents from enhanced sentencing provisions. The argument is made that if "parents" could not be liable under the general provisions of the statute, it would be unnecessary to exempt "parents" from the sentencing provision. Thus, the government asserts that biological parents who have had their parental rights permanently terminated are a type of parent who should not be considered "parents" under the general exemption to the Act.[5] Whether there exists a type of "parent", other than a biological parent, who is not subject to the exemption is beyond the scope of this opinion.

 In order for this Court to conclude that Congress intended such severed parents to be liable under the Act, the Court must first find itself free to read such a distinction into the law. In determining the scope of a statute the court must first look to its language. The words of a statute are to be given their ordinary meaning. *Moskal v. United States,* 498 U.S. 103, 111 S.Ct. 461, 112 L.Ed.2d 449 (1990); *United States v. Stokley,* 881 F.2d 114, 116 (4th Cir.1989). Statutory construction must begin with the language of the statute and the court should not look beyond that language unless there is ambiguity or unless the statute as literally read would contravene the unambiguously expressed legislative intent gleaned from the

---

5. One problem with this theory of construction is that it would require the term "parent" to have two meanings under the statute. If the parental exemption in the liability section of the Act was not meant to apply to severed parents, and the proof of this is their inclusion in the sentence enhancement section, then for the sentence enhancement section to be meaningful as to the term "parents" it must be referring to the "severed parents" still generally liable as a result of the limited reading of the liability section. Thus "severed parents" are liable under the Act since they *are not* the "parents" exempted in the liability section, but the same "severed parents" avoid enhanced sentences for the very reason that they *are* the "parents" referred to in that section. This Court does not find this theory of construction persuasive.

statute's legislative history. *Russello v. United States*, 464 U.S. 16, 20–28, 104 S.Ct. 296, 299–303, 78 L.Ed.2d 17 (1983); *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108–116, 100 S.Ct. 2051, 2056–60, 64 L.Ed.2d 766 (1980). Even if the result appears to be anomalous or absurd in a particular case, the court may not disregard unambiguous language. *United States v. Harvey*, 814 F.2d 905, 917 (4th Cir.1987) (citing *North Carolina Dep't of Transportation v. Crest Street Community Council*, 479 U.S. 6, 14–15, 107 S.Ct. 336, 341, 93 L.Ed.2d 188 (1986)), *superseded on other grounds In re Forfeiture Hearing as to Caplin & Drysdale*, 837 F.2d 637 (4th Cir.1988).

■ In its suggestion that this Court must read into the statute congressional intent not to exempt a biological parent whose rights have been permanently terminated, the government faces three persuasive counter-arguments:

(1) Notwithstanding the government's reference to Black's Law Dictionary for the proposition that the word "parent" is susceptible of some expansive variation in its exact definition, this Court finds no basis for contracting the definition to exclude one who begets the child. A state court, pursuant to its authority to oversee domestic relations matters, may terminate parental rights but it may not alter the identity of a biological parent.

(2) The government has not persuaded this Court that some "anomalous result" would occur if a biological mother is found to be a parent under the circumstances of this case. Thus, *Harvey* further persuades this Court to find biological parents excluded from criminal liability.

(3) This is a criminal statute which carries with it special rules of construction. It is a fundamental rule of criminal statutory construction that statutes are to be strictly construed and should not be interpreted to extend criminal liability beyond that which Congress has "plainly and unmistakably" proscribed. *Dunn v. United States*, 442 U.S. 100, 112–13, 99 S.Ct. 2190, 2197, 60 L.Ed.2d 743 (1979) (quoting *United States v. Gradwell*, 243 U.S. 476, 485, 37 S.Ct.

407, 410–11, 61 L.Ed. 857 (1917)); *United States v. Bice–Bey*, 701 F.2d 1086 (4th Cir.), *cert. denied*, 464 U.S. 837, 104 S.Ct. 126, 78 L.Ed.2d 123 (1983). The accused lacks fair notice of criminal liability when it is based on some "unforeseeable judicial construction of the statute." *Marks v. United States*, 430 U.S. 188, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977). Thus, "ambiguities in criminal statutes must be resolved in favor of lenity for the accused." *United States v. Headspeth*, 852 F.2d 753 (4th Cir.1988). This rule alone prevents this Court from carving out of the parental exemption to the Lindbergh Act those biological parents who have been the subject of a termination decree at the hands of a state court.

### B. *Federal Common Law*

The government also argues that the Court should look to the applicable state law to determine if a parent who is the subject of a termination of rights order (the likes of which every state may issue in certain situations) is still a "parent" under the federal law. This approach is founded on the premise that there is some ambiguity in Congress' use of the word "parent" which must be clarified in order to apply the statute to this case. Having determined that the statute is unambiguous and exempts all biological parents, there is no basis for this Court to create such federal common law.

### III.

In order for the Court to search outside the statute for a definition of "parent", which does not include biological parents whose legal rights as to the child have been terminated, some ambiguity or inconsistent legislative history must be found. Even if an ambiguity or such an inconsistency were found, the government's interpretation would run afoul of the rule of lenity. The parental exemption from criminal liability under the Lindbergh Act should apply to the biological parent of the child kidnapped. For the foregoing reasons, the dismissal of the indictment by the district court is

AFFIRMED.

K.K. HALL, Circuit Judge, dissenting:

"The Parental Rights of Defendant Grace Clark [Sheek] and Defendant Rex Allen York to Amanda York and Michael York are hereby terminated, henceforth and forever." *Hopkins v. S.C. Dept. of Social Services*, Case No. 89–DR–21–231 (Family Court of the 12th Jud'l Cir., S.C. Nov. 22, 1989). Grace Ann Sheek was not embroiled in a custody battle with Amanda's or Michael's father(s) or with some other third party. In August 1991, Sheek had no greater legal claim on the children than I did. Nevertheless, under the banners of plain-meaning and lenity, the majority holds that this stranger may abduct two children without transgressing the Lindbergh Act. I cannot accept such an anomalous result, and I dissent.

The legislative history of the Lindbergh Act may be scant, but what is available does not support the interpretation of the parental-exemption provision adopted by the majority. Congressman Dyer's explanation—that the original statute was not intended to include any "parent . . . taking possession of his or her own child, even though the order of the court was violated and it was a technical kidnapping" (maj. op. at 152)—clearly indicates an intent to keep federal law out of the realm of divorce and custody disputes between parents with existing legal ties to the child. The 1934 amendment merely clarified this. *See Crandon v. United States*, 494 U.S. 152, 157–58, 110 S.Ct. 997, 1001, 108 L.Ed.2d 132 (1990) ("In determining the meaning of the statute, we look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy."). Grace Ann Sheek, however, was not on the losing end of a custody decree vis-a-vis the children's father(s); the state court order irrevocably rendered her a legal stranger to the child. Her crime was no "technical violation." *

"A criminal law is not to be read expansively to include what is not plainly embraced within the language of the statute, since the purpose fairly to apprise men of the boundaries of the prohibited action would then be defeated; but there is no canon against using common sense in reading a criminal law, so that strained and technical constructions do not defeat its purpose by creating exceptions from or loopholes in it." *Kordel v. United States*, 335 U.S. 345, 349–50, 69 S.Ct. 106, 109–110, 93 L.Ed. 52 (1948) (citations omitted). The Lindbergh Act enables the vast resources of the federal government to be mobilized against the heinous crime of kidnapping. *See Chatwin v. United States*, 326 U.S. 455, 462–63, 66 S.Ct. 233, 236–37, 90 L.Ed. 198 (1946). Now, at least in Maryland, the Virginias and the Carolinas, the federal government has been rendered powerless to punish abductions of children by persons who have forfeited the right to be called a parent.

I would reverse and remand with directions to reinstate the indictment.

---

\* The South Carolina kidnapping statute was apparently modelled on the Lindbergh Act; it too exempts the parent of a kidnapped child. See S.C.Code Ann. § 16–3–910 (Law.Co-op.1976).

Armed with a copy of the court's opinion, Sheek will presumably be able to abduct Michael and Amanda with impunity.