<u>**UNPUBLISHED**</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 05-4647**

UNITED STATES OF AMERICA,

                    Plaintiff - Appellee,

          v.

KENNETH WAYNE FORD, JR.,

                    Defendant - Appellant.

**No. 06-4388**

UNITED STATES OF AMERICA,

                    Plaintiff - Appellee,

          v.

KENNETH WAYNE FORD, JR.,

                    Defendant - Appellant.

Appeals from the United States District Court for the District of
Maryland, at Greenbelt.   Peter J. Messitte, District Judge.
(8:05-cr-00098-PJM; 8:05-cr-00235-PJM)

Submitted:  June 26, 2008          Decided:  August 4, 2008

Before WILKINSON, MICHAEL, and TRAXLER, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

Spencer M. Hecht, Silver Spring, Maryland, for Appellant.  Rod J. Rosenstein, United States Attorney, David I. Salem, Assistant United States Attorney, Greenbelt, Maryland, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In these consolidated appeals, Kenneth Wayne Ford challenges the district court's order dismissing the indictment against him without prejudice, pursuant to the Federal Speedy Trial Act of 1974, 18 U.S.C. §§ 3161-3174 (2000) (Appeal No. 05-4647), and his subsequent conviction and 72-month sentence for unauthorized possession of national defense information, in violation of 18 U.S.C. § 793(e) (2000), and making a material false statement to a government agency, in violation of 18 U.S.C. § 1001 (2000) (Appeal No. 06-4388). We affirm.

## (I) Espionage Act conviction

Ford argues that § 793(e) does not criminalize the retention, without transmittal, of classified material, despite the plain meaning of the statute's language, because this language contravenes the intent expressed in its legislative history. Ford contends that the legislative history of § 793(e) does not reveal an intent to criminalize retention, without transmittal, of classified material, and that the absence of a lesser statutory maximum punishment for retention alone indicates that retention without transmittal does not violate the statute.

We review issues of statutory construction de novo. United States v. Childress, 104 F.3d 47, 50 (4th Cir. 1996). Statutory language should be given its ordinary meaning "unless there is ambiguity or unless the statute as literally read would

-3-

contravene the unambiguously expressed legislative intent gleaned from the statute's legislative history."  United States v. Sheek, 990 F.2d 150, 152-53 (4th Cir. 1993) (citations omitted).  Criminal statutes "are to be strictly construed and should not be interpreted to extend criminal liability beyond that which Congress has plainly and unmistakably proscribed."  Id. at 153 (citations and internal quotes omitted).  Criminal liability may not be based upon a statutory construction that would be unforeseeable to the accused, and "ambiguities in criminal statutes must be resolved in favor of lenity for the accused."  Id.

Section 793(e) reads:

> Whoever having unauthorized possession of, access to, or control over any document, writing, code book, signal book, sketch, photograph, photographic negative, blueprint, plan, map, model, instrument, appliance, or note relating to the national defense, or information relating to the national defense which information the possessor has reason to believe could be used to the injury of the United States or to the advantage of any foreign nation, willfully communicates, delivers, transmits or causes to be communicated, delivered, or transmitted, or attempts to communicate, deliver, transmit or cause to be communicated, delivered, or transmitted the same to any person not entitled to receive it, or willfully retains the same and fails to deliver it to the officer or employee of the United States entitled to receive it . . . [s]hall be fined under this title or imprisoned not more than ten years, or both.

18 U.S.C. § 793(e), (f) (emphasis added).  Ford concedes that the plain language of § 793(e) criminalizes the unauthorized possession and retention of classified information.

We addressed the plain meaning and legislative history of sections 793(d) and (e) in United States v. Morison, 844 F.2d 1057 (4th Cir. 1988). The defendant in Morison appealed from his convictions for unauthorized transmittal of classified information, in violation of § 793(d), and retention of classified information of which he had unauthorized possession, in violation of § 793(e), as well as theft of government records, in violation of 18 U.S.C.A. § 641 (West 2000 & Supp. 2008). Id. at 1060. Morison argued he should not have been convicted under §§ 793(d) and (e) because his conduct involved transmittal of classified information to the press, rather than to agents of a foreign government, and thus did not fall within the scope of "classical spying" that Congress intended to criminalize under the Espionage Act. Id. at 1063.

In rejecting Morison's argument, we stated, "[i]t is difficult to conceive of any language more definite and clear" than § 793(d)'s prohibition against transmittal of classified information to any unauthorized recipients and § 793(e)'s prohibition against retention of classified information pursuant to unauthorized possession. Id. We held that the plain meaning of §§ 793(d) and (e), as applied in Morison's case, did not present any exceptional circumstance that would justify departing from literal statutory construction based upon the statute's legislative history. Id. at 1064.

We were "convinced . . . that the legislative history [did] not support the defendant's construction of sections 793(d) and (e)." Id. We primarily considered the legislative history of the Espionage Act of 1917, which included § 793(d) but not § 793(e), added in the 1950 revision, but noted that "the same general considerations will apply to (e) since it was intended to supplement (d) by criminalizing retention." Id. at 1065 n.9. We concluded that "[i]t seems abundantly clear from [their] legislative history that sections 793(d) and (e) were not intended to be restricted in application to classic spying but were intended to criminalize the disclosure to anyone not entitled to receive it." Id. at 1066 (internal quotes omitted).

The legislative history of § 793(e) shows no Congressional intent to criminalize transmittal, but not retention, of classified information by unauthorized possessors. On the contrary, the Senate Report preceding the statute's enactment states:

> Existing law provides no penalty for the unauthorized possession of such items unless a demand for them is made by the person entitled to receive them. The dangers surrounding the unauthorized possession of the items enumerated in this statute are self-evident, and it is deemed advisable to require their surrender in such a case, regardless of demand, especially since their unauthorized possession may be unknown to the authorities who would otherwise make the demand.

S. Rep. No. 80-427, at 7 (1949). Ford identifies no portion of the legislative history that contradicts the Senate Report's indication

that Congress intended to criminalize unauthorized possession and retention of classified information, within the plain meaning of § 793(e). We reject Ford's argument that Congress' failure to provide a lesser maximum statutory penalty than that provided for transmittal evidences its intent not to criminalize retention. As discussed further below, the statute provides only a maximum penalty, not a minimum, and the specifics of the offense conduct may properly be addressed at the sentencing phase, as they were in this case. Accordingly, we hold that the district court did not err in convicting Ford under § 793(e) for retention of classified information that he was not authorized to possess.

## (II) Speedy Trial Act

Ford presents two arguments under the Speedy Trial Act. First, he asserts that the district court erred in its computation of excludable time between his arrest and the filing of the indictment. He contends that he was presented with a criminal complaint on January 12, 2004, but was not indicted until March 7, 2005, and that the Government's delay was not based upon any recognized exception to the Speedy Trial Act's 30-day rule. He argues that the district court erred in finding excludable as "plea negotiations" the portion of the delay during which the Government sought security clearances for Ford's attorneys and authorization from the Department of Justice ("DOJ") to proceed with the prosecution.

The Federal Speedy Trial Act of 1974, 18 U.S.C. §§ 3161 - 3174 (2000), requires that an indictment be filed within thirty days of the defendant's arrest. 18 U.S.C. § 3161(b) (2000). Certain delays "resulting from other proceedings concerning the defendant" are excludable when computing the time within which a defendant must be indicted. 18 U.S.C. § 3161(h). Specifically, delays resulting from plea negotiations, and pretrial motions, from the time of their filing through their disposition, are excludable. 18 U.S.C. § 3161(h)(1)(F); see United States v. Bowers, 834 F.2d 607, 610 (6th Cir. 1987); United States v. Montoya, 827 F.2d 143, 150 (7th Cir. 1987). A defendant may not prospectively waive his statutory right to a speedy trial. Zedner v. United States, 547 U.S. 489, 500-03 (2006). We review de novo a district court's interpretation of the Speedy Trial Act, and review the court's related factual findings for clear error. United States v. Bush, 404 F.3d 263, 272 (4th Cir. 2005).

Here, the Government presented its criminal complaint against Ford to the district court on January 12, 2004, but did not initially indict him until March 7, 2005 - 419 days later. Ford concedes that sixty-five days were properly excluded for disposition of his pretrial motions, but contends that the district court should have excluded only eighteen days for plea negotiations and other proceedings.

We hold that the district court did not err, as a matter of law, by excluding as time spent on plea negotiations the time necessary for Ford's attorneys to obtain security clearances. Although Ford's January 22, 2004, letter indicating that he wished to discuss resolution of the charges against him did not waive his rights under the Speedy Trial Act, the district court did not clearly err in finding that the letter expressed Ford's intent to pursue plea negotiations, and that obtaining security clearances for Ford's attorneys was a necessary prerequisite to conducting the negotiations. Ford could not reasonably have expected his attorney to advise him concerning the Government's plea offer without having reviewed the evidence against him, which first required obtaining a security clearance.

Despite the district court's proper exclusion of these periods, the court found that a violation of the Act occurred, and dismissed the indictment without prejudice. Ford's second argument is that the district court erred in failing to dismiss with prejudice. We review a district court's decision to dismiss an indictment for noncompliance with the Speedy Trial Act with or without prejudice for abuse of discretion. United States v. Jones, 887 F.2d 492, 494 (4th Cir. 1989). Neither type of dismissal is "the presumptive remedy for a Speedy Trial Act violation." United States v. Taylor, 487 U.S. 326, 334 (1988). Section 3162(a)(1) lists the specific factors that a court must consider when deciding

whether to dismiss a case with or without prejudice due to a Speedy Trial violation: "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice."  "[A] district court must carefully consider those factors as applied to the particular case and, whatever its decision, clearly articulate their effect in order to permit meaningful appellate review." Taylor, 487 U.S. at 336.  The Supreme Court has held that "the presence or absence of prejudice to the defendant" is also "relevant for a district court's consideration." Id. at 334.  "[W]hen the statutory factors are properly considered, and supporting factual findings are not clearly in error, the district court's judgment of how opposing considerations balance should not lightly be disturbed." Id. at 337.  However, when a district court "has ignored or slighted a factor that Congress has deemed pertinent to the choice of remedy," it has abused its discretion under the limits of the Speedy Trial Act. Id.

Here, the district court found that Ford's alleged offense was serious, and that the parties had conceded its seriousness, although Ford disputes this finding on appeal. Regarding the prejudice to Ford from the delay, the court found "that it has been problematic and difficult for the defendant in terms of his seeking and maintaining employment."  The court found

the facts and circumstances leading to dismissal to be the dispositive factor, because the Government exceeded the statutory thirty-day limit by "only a few days" based upon plausible arguments for exclusion of further time. The district court did not specifically address the impact of reprosecution on the administration of the Speedy Trial Act and the administration of justice.

We find that the district court did not abuse its discretion in dismissing the indictment without prejudice. The statutory factors support the district court's decision. Ford's alleged offense conduct constituted a serious violation of the Espionage Act. The facts and circumstances leading to dismissal consisted of the Government's delay in indicting Ford for over a month beyond the statutory limit while it sought approval for prosecution from the DOJ. Although the amount of time by which the Government exceeded the statutory limit was modestly greater than the district court acknowledged, the Government had an arguable basis for its belief that the time during which it sought DOJ approval was excludable. Furthermore, the periods that were excluded by the district court resulted from the need for Ford's attorneys to get security clearances and from their scheduling conflicts, rather than from any affirmative delay by the Government.

The final factor is the impact of reprosecution on the administration of the Speedy Trial Act and the administration of justice. While reprosecution might harm the administration of the Speedy Trial Act by failing to adequately penalize the Government for its delay in bringing the indictment, it favors the administration of justice by ensuring that Ford does not escape prosecution for a serious offense. Finally, although Ford was prejudiced by the delay because he was unable to work in his field of expertise while the charges were pending, he may have permanently lost any chance of working in that field as a result of the charges and the circumstances surrounding them. Accordingly, on balance, the statutory factors support the district court's decision to dismiss the indictment without prejudice; the court, therefore, did not abuse its discretion.

**(III) Sentence**

Ford argues that the district court committed three errors in sentencing him to 72 months' imprisonment on Count 1 and 36 months' concurrent imprisonment on Count 2. First, Ford contends that the district court erred in enhancing his offense level by two levels for abuse of public trust, based upon U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 3B1.3 (2005). He argues that his conduct does not justify this enhancement and that the offense characteristics of § 793(e) already incorporate an abuse of trust enhancement. Second, Ford argues that his 72-month

sentence for Count 1 is substantively unreasonable because the district court overemphasized the nature and seriousness of his offense conduct and created an unwarranted sentencing disparity between Ford and similarly-situated defendants. Third, Ford argues that his 36-month sentence for Count 2 is unreasonable because the district court incorrectly calculated the Guidelines range for Count 2 and sentenced Ford above the correct Guidelines range without stating any reasons for the alleged variance.

## A. Abuse of Public Trust Enhancement

Following United States v. Booker, 543 U.S. 220 (2005), a district court must engage in a multi-step process at sentencing. First, it must calculate the appropriate advisory Guidelines range. It must then consider the resulting range in conjunction with the factors set forth in 18 U.S.C.A. § 3553(a) (West 2000 & Supp. 2008), and determine an appropriate sentence. United States v. Davenport, 445 F.3d 366, 370 (4th Cir. 2006)(overruled in part on other grounds by Irizarry v. United States, 128 S. Ct. 2198, 2201-02 (2008). The appellate court reviews the sentence for abuse of discretion. Gall v. United States, 128 S. Ct. 586, 597 (2007). The appellate court must first ensure that the district court committed no procedural error, such as "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing

to adequately explain the chosen sentence--including an explanation for any deviation from the Guidelines range."  Id.

We review de novo a district court's legal interpretation of whether a defendant abused a position of trust under U.S.S.G. § 3B1.3, and review its factual findings for clear error.  United States v. Ebersole, 411 F.3d 517, 535-36 (4th Cir. 2005).  Section 3B1.3 provides:

> If the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels.  This adjustment may not be employed if an abuse of trust or skill is included in the base offense level or specific offense characteristic.

An adjustment under § 3B1.3 is warranted "if the district court determines that [the defendant] abused a position of trust and that abuse significantly contributed to the commission or concealment of the crime."  Ebersole, 411 F.3d at 536 (internal quotation marks and citations omitted).

"The sometimes difficult inquiry into what constitutes a 'position of trust' is guided to some extent by the commentary to § 3B1.3 . . . . "  Id.

> "Public or private trust" refers to a position of public or private trust characterized by professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference).  Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature.  For this adjustment to apply, the position of public or private trust must have contributed in some significant way to facilitating the

commission or concealment of the offense (e.g., by making the detection of the offense or the defendant's responsibility for the offense more difficult).

U.S.S.G. § 3B1.3 cmt. n.1. Notwithstanding Application Note 1, the adjustment applies to "[a]n employee of the United States Postal Service who engages in the theft or destruction of undelivered United States mail." Id. at cmt. n.2(A).

We have identified several factors that a district court should consider in determining whether a defendant held a position of trust:

First, courts ask whether the defendant had special duties or "special access to information not available to other employees." Second, the defendant's level of supervision or "degree of managerial discretion" is relevant. Bank tellers who embezzle from their employers provide an example of a situation where there is little trust to abuse because the employees are closely supervised, and it is expected that wrongs they commit will be readily detected. Third, the analysis also entails an examination of "the acts committed to determine whether this defendant is 'more culpable' than others who hold similar positions and who may commit crimes."

United States v. Glymph, 96 F.3d 722, 727 (4th Cir. 1996) (citation omitted). "It is certainly also important to inquire into the level of harm occasioned by the breach of trust." United States v. Pitts, 176 F.3d 239, 246 (4th Cir. 1999).

Here, the district court did not err in enhancing Ford's sentence pursuant to U.S.S.G. § 3B1.3. As an initial matter, although the court stated that it would "revisit" the issue of the abuse of trust enhancement when it determined Ford's sentence

-15-

pursuant to § 3553(a), the district court was required to properly calculate the advisory Guidelines range before moving on to determine Ford's ultimate sentence. The district court did not commit clear error in finding that Ford held a position of public trust. Ford held a top secret security clearance as an employee of the National Security Agency and he was able to remove classified documents from his office without detection by his supervisors. Ford's actions exposed classified information to discovery by a person without a security clearance and created a potential for serious harm to our nation's security.

The district court also did not err in finding that Ford's advisory Guidelines sentence should be enhanced because his abuse of his position of public trust contributed significantly to his commission of the offense. Ford simply would not have been able to commit the offense of retaining classified documents without permission if he had not held a top secret security clearance as an employee of NSA.

### B. Reasonableness of Sentence on Count 1

In determining a reasonable sentence pursuant to § 3553(a), one of the factors the sentencing court must consider is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. . ." 18 U.S.C.A. § 3553(a)(6). Following the Supreme Court's decision in Booker, "it is unquestioned that uniformity remains an important

-16-

goal of sentencing." Kimbrough v. United States, 128 S. Ct. 558, 573 (2007). However, the Supreme Court has "recognized that some departures from uniformity were a necessary cost" of the advisory Guidelines remedy adopted in Booker. Id. at 574.

The district court did not abuse its discretion in sentencing Ford to 72 months' imprisonment, a sentence below the advisory Guidelines range of 108 to 135 months' imprisonment. The court properly considered the advisory Guidelines range and the factors in § 3553(a), including the seriousness of Ford's offense and the need to avoid the unwarranted sentencing disparity that might result from sentencing Ford, who was convicted only of retaining classified information that he was not authorized to possess, at the same level as defendants who are convicted of transmitting classified information to unauthorized recipients.

### C. Calculation of Guidelines Sentence on Count 2

We briefly address Ford's other claim that the district court procedurally erred in calculating his sentence. Pursuant to U.S.S.G. § 3D1.4, "[t]he combined offense level is determined by taking the offense level applicable to the [Count] with the highest offense level and increasing that offense level" based upon the seriousness of the other Counts. A Count that is nine or more levels less serious than the Count with the highest offense level is disregarded for the purpose of computing the combined offense level, "but may provide a reason for sentencing at the higher end

of the sentencing range for the applicable offense level." U.S.S.G. § 3D1.4(c). Here, the district court correctly assigned the offense level applicable to Count One and did not increase the combined offense level based upon Count Two. Accordingly, the district court did not commit a procedural error.

Accordingly, we affirm the district court's dismissal without prejudice of the original indictment against Ford, and Ford's subsequent conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>