PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.                                              No. 02-4650

SYLVIA ANITA RYAN-WEBSTER,
            *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
T. S. Ellis, III, District Judge.
(CR-02-60-A)

Argued: September 26, 2003

Decided: December 22, 2003

Before WILLIAMS, TRAXLER, and KING, Circuit Judges.

---

Affirmed by published opinion. Judge King wrote the opinion, in which Judge Traxler joined. Judge Williams wrote an opinion concurring in part and dissenting in part.

---

## COUNSEL

**ARGUED:** Drewry Bacon Hutcheson, Jr., MCGINLEY, ELSBERG & HUTCHESON, P.L.C., Alexandria, Virginia, for Appellant. Thomas Higgins McQuillan, Assistant United States Attorney, Alexandria, Virginia, for Appellee. **ON BRIEF:** Paul J. McNulty, United States Attorney, Robert C. Erickson, Assistant United States Attorney, Alexandria, Virginia, for Appellee.

**OPINION**

KING, Circuit Judge:

Sylvia Anita Ryan-Webster was convicted in the Eastern District of Virginia in 2002 of conspiracy to defraud the United States and four counts of immigration fraud. On appeal, Ryan-Webster challenges four of her five convictions, contending: (1) that the conduct underlying three of her immigration fraud convictions does not fall within the ambit of the governing statute, 18 U.S.C. § 1546(a); and (2) that the district court committed plain error when it named an unindicted co-conspirator in the jury instructions. As explained below, we reject these contentions and affirm.

I.

A.

During the relevant time period, Ryan-Webster was the sole practitioner in a District of Columbia law practice called Ryan & Webster. Her work primarily involved the representation of aliens seeking permanent legal status in the United States through the process for issuance of Permanent Resident Cards (commonly called "green cards").[1] One method for securing a Permanent Resident Card is for an alien to first obtain immigrant status based on employment in the United States. Under the evidence, Ryan-Webster systematically sought immigrant status for her clients as part of an immigration fraud scheme. That scheme, and particularly her use of fraudulent immigration documents, underlies the criminal convictions challenged in this appeal.

In order to properly assess Ryan-Webster's contentions, we must possess an elementary understanding of the process through which aliens seek and secure immigrant status based on employment. Pursuant to federal law, an alien seeking permanent legal status based on

---

[1]A Permanent Resident Card evidences an alien's status as a lawful permanent resident with a right to live and work permanently in the United States. *See* 8 C.F.R. § 264.1. A Permanent Resident Card is also called an Alien Registration Receipt Card.

employment must utilize a three-step process, involving the Department of Labor (the "DOL"), the Department of State, and the Immigration and Naturalization Service (the "INS").[2]

First, an alien must have a prospective employer in this country, and that employer must petition the DOL for a "Labor Certification" on behalf of the alien.[3] The DOL administers its Labor Certification program through one of its agencies, the Employment and Training Administration (the "ETA").[4] When issued, a Labor Certification evidences the DOL's acknowledgment of two predicate facts: (1) sufficient United States workers are not able, willing, qualified, and available for a particular job; and (2) employment of a particular alien will not adversely effect the wages and working conditions of United States workers similarly employed. *See* 8 U.S.C. § 1182(a)(5)(A)(i). In order to secure a Labor Certification, an alien's prospective employer, or an attorney acting on its behalf, is required to file with the DOL a Form ETA-750, Application for Alien Employment Certification ("Certification Application"). If an attorney acts for the employer, the attorney is required to file with the DOL an INS Form G-28, Notice of Entry of Appearance as Attorney or Representative ("Attorney Appearance Notice").[5] 20 C.F.R. § 656.20(b)(2). The Cer-

---

[2]On March 1, 2003, the INS, which was formerly part of the Department of Justice, became the Bureau of Citizenship and Immigration Service in the Department of Homeland Security. Because this appeal concerns events occurring before March 1, 2003, we refer only to the INS.

[3]The INS recognizes certain exceptions to the Labor Certification requirement; e.g., priority workers, professionals with advanced degrees or exceptional abilities, and certain special immigrants. Absent such an exception, a Labor Certification is required for both skilled and unskilled workers. *See* 8 U.S.C. § 1153(b). Ryan-Webster's fraud scheme involved workers who required Labor Certifications.

[4]The ETA administers the Labor Certification program through a network of state-level work agencies. The three such agencies relevant here are the Maryland Department of Labor, Licensing and Regulations; the Virginia Employment Commission; and the District of Columbia Department of Employment Services. For our purposes, we refer collectively to the state-level work agencies and the ETA as the "DOL."

[5]Employers represented by counsel in the Labor Certification process are required to sign Certification Applications submitted to the DOL on their behalf. 20 C.F.R. § 656.20(b)(1).

tification Application is analyzed by the DOL and, if it satisfies the essential requirements, it is then "certified" and constitutes a valid Labor Certification.

In the second step of the process, the alien's prospective employer, or an attorney acting on the employer's behalf, is required to file with the INS the Labor Certification, along with a Form I-140, Visa Petition for Prospective Immigrant Employee ("Visa Petition"). An attorney representing the prospective employer in this second step must also file with the INS an Attorney Appearance Notice.[6] *See* 8 C.F.R. § 299.1. A Visa Petition constitutes a request to the INS that the alien named in the Labor Certification be classified as eligible to apply for designation within a specified visa preference employment category. *See* 8 U.S.C. § 1153(b). If the INS approves the Visa Petition and classifies the certified alien as so eligible, the alien is assigned an immigrant visa number by the Department of State.

The requirements for the final step of the three-part green card process depend upon whether the certified alien, at the time of his application, resides inside or outside the United States. When a *resident* alien receives a visa number, he must file with the INS a Form I-485, Application to Adjust Status ("Green Card Application"). The INS then considers the resident alien's Visa Petition and Green Card Application and determines whether to "adjust" the resident alien's status. 8 C.F.R. § 204.5(n). If the Green Card Application is approved, the INS adjusts the status of the resident alien to that of a lawful permanent resident who is entitled to live and work in the United States. 8 U.S.C. § 1255(a). The INS then issues a green card to the immigrant evidencing his immigrant status. On the other hand, when a *nonresident* alien is assigned a visa number, he must then complete the application process for an immigrant visa. *See id.* § 1181(a). Upon completion of this process and receipt of INS approval, the nonresident alien receives an immigrant visa and is entitled to enter and work in the United States. Sometime after entering the United States, the immigrant receives his green card from the INS.

---

[6]As with the Certification Application, an employer represented by counsel must also sign a Visa Petition submitted to the INS on its behalf.

B.

In her law practice, Ryan-Webster specialized in securing permanent legal status for her alien clients through the process summarized above. Under the evidence, Ryan-Webster, in the typical situation, would file a Certification Application, together with an Attorney Appearance Notice, with the DOL, seeking a Labor Certification for an alien client and the alien's purported prospective employer. Upon issuance of a Labor Certification by the DOL, Ryan-Webster would submit it to the INS on behalf of the purported prospective employer, along with a Visa Petition and an Attorney Appearance Notice. Ryan-Webster would normally charge her alien clients approximately $7,000 each for her work in this process.

Ryan-Webster developed a lucrative law practice in the representation of her alien clients. In order to expedite the process, she systematically forged the signatures of purported prospective employers on the Certification Applications and Visa Petitions filed with the DOL and the INS.[7] Because she filed Attorney Appearance Notices with the DOL and INS, purporting to represent prospective employers, the immigration authorities dealt exclusively with Ryan-Webster.

C.

In February 2002, Ryan-Webster was indicted in the Eastern District of Virginia for five felony offenses arising out of her immigration fraud scheme. In Count 1 of the Indictment, she was charged under 18 U.S.C. § 371 with conspiracy to defraud the United States "by attempting to obtain, and by obtaining, by false statements, forgery and fraud, immigration benefits for aliens." In Counts 2, 3, and 5, Ryan-Webster was charged under 18 U.S.C. § 1546(a). The charges alleged in those three counts tracked the language of the first of the four unnumbered paragraphs of § 1546(a). The first paragraph of § 1546(a) provides, in relevant part:

---

[7]Several of the purported prospective employers whose signatures Ryan-Webster forged had previously hired her to secure legitimate Labor Certifications and immigrant visas for prospective alien employees.

> Whoever knowingly . . . utters, uses, [or] possesses . . . any such visa, permit, border crossing card, alien registration receipt card, or other document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States, knowing it to be forged, counterfeited, altered, or falsely made [is guilty of a felony].

18 U.S.C. § 1546(a).[8] In charging Ryan-Webster with the fraudulent use of Certification Applications and Visa Petitions, Counts 2, 3, and 5 alleged that she uttered, used, and possessed documents "prescribed by statute or regulation for entry into, or as evidence of authorized stay or employment in the United States" which she "knew to be forged and falsely made."[9]

---

[8]In Count 4, Ryan-Webster was charged under the fourth unnumbered paragraph of § 1546(a) with, in substance, making false statements on an Attorney Appearance Notice. Under that paragraph:

> Whoever knowingly . . . subscribes as true, any false statement with respect to a material fact in any application, affidavit, or other document required by the immigration laws or regulations prescribed thereunder, or knowingly presents any such application, affidavit, or other document which contains any such false statement or which fails to contain any reasonable basis in law or fact . . . [is guilty of a felony].

18 U.S.C. § 1546(a). At oral argument, Ryan-Webster abandoned any challenge to her conviction on Count 4. Because the other three immigration fraud charges in the Indictment concern only the first paragraph of § 1546(a), our references to "§ 1546(a)" are to its first paragraph only, except where we specifically distinguish between the first and fourth paragraphs thereof. *See infra* notes 14, 16.

[9] According to Count 2 of the Indictment, Ryan-Webster:

> did knowingly utter, use, and possess documents prescribed by statute or regulation for entry into, or as evidence of authorized stay or employment in the United States, that is, Alien Employment Certification Applications, also known as Form ETA 750s, purportedly on behalf of C.A.R. Collision and James Ratcliffe and Rachel Ratcliffe, which the defendant knew to be forged and falsely made . . . .

As alleged in Count 3 of the Indictment, Ryan-Webster:

In April of 2002, Ryan-Webster was tried before a jury in federal court in Alexandria, Virginia. Nora Azenon-Gomez, Ryan-Webster's former office assistant, was a key government witness. In connection with Count 2, Azenon-Gomez testified that Ryan-Webster had signed the name "James Radcliffe," on behalf of C.A.R. Collision, on approximately fifteen Certification Applications filed with the DOL. Radcliffe was also called as a witness, and he testified that he had neither signed those forms nor given Ryan-Webster permission to sign for him. Each form reflected that the prospective alien employee lived outside the United States and intended to apply for an immigrant visa. In connection with Count 3, Azenon-Gomez testified that the name "Cecil Lockhart" on the relevant Visa Petition was signed by Ryan-Webster. Lockhart, in his testimony, denied any knowledge of either this form or of Mitra Rezvani, the prospective alien employee for whom it was filed. The Visa Petition reflected that Rezvani lived outside the United States and intended to apply for an immigrant visa. As to Count 5, Azenon-Gomez identified Ryan-Webster as having signed the name "Eliana Noguchi" on a Certification Application and on a Visa Petition filed on behalf of the Little Flower Montessori School. In her testimony, Ms. Noguchi denied any knowledge of these forms and of Manik Kadir, the prospective employee named thereon. The forms reflected that Kadir resided in Virginia and intended to petition for an adjustment of his alien status to that of an

---

knowingly utter[ed], use[d], and possess[ed] a document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States, that is, an employment based visa petition, purportedly on behalf of Mitra Rezvani and Lockhart Insurance Services, which the defendant knew to be forged and falsely made . . . .

Finally, in Count 5, the grand jury charged that Ryan-Webster:

did knowingly utter, use and possess a document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States, that is, an Alien Employment Certification Application and an employment based visa application, purportedly on behalf of Manik Kadir and the Little Flower Montessori School, which the defendant knew to be forged and falsely made . . . .

immigrant. The defense presented no evidence on behalf of Ryan-Webster.

At the conclusion of the evidence, Ryan-Webster sought judgment of acquittal on Counts 2, 3, and 5, pursuant to Rule 29 of the Federal Rules of Criminal Procedure.[10] In support of her Rule 29 motion, Ryan-Webster contended that § 1546(a) does not apply to the conduct underlying Counts 2, 3, and 5. More specifically, she asserted that Certification Applications and Visa Petitions do not constitute documents "prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States . . . ." The court denied Ryan-Webster's motion.

Prior to the jury deliberations, the court instructed the jury on the applicable legal principles. The court first instructed on the law of conspiracy under Count 1 of the Indictment. In instructing the jury on the co-conspirator aspect of that Count, the court advised, "Now, evidence has been received in this case that a person, Nora Azenon-Gomez, the defendant's legal assistant, was a co-conspirator of the defendant and said things during the existence or life of the alleged conspiracy in order to further advance its goals." Ryan-Webster raised no objection to this part of the instructions. The court then instructed the jury on Counts 2 through 5. As to Counts 2, 3, and 5, the court explained that the Government was obliged to prove each of three elements beyond a reasonable doubt: First, "that the defendant uttered, used, or possessed a document; second, that the document was prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States; and, third, that the defendant knew the document was forged and falsely made." Ryan-Webster also did not object to this instruction.

The jury found Ryan-Webster guilty on all five counts of the Indictment. On August 2, 2002, the court sentenced Ryan-Webster to sixty months imprisonment on Count 1 and to concurrent terms of seventy-two months on each of Counts 2 through 5. After filing her

---

[10]Pursuant to Rule 29(a): "After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a).

notice of appeal on August 6, 2002, Ryan-Webster filed an emergency pro se motion in the district court, seeking to vacate, set aside, or correct her sentence under 28 U.S.C. § 2255. Additionally, Ryan-Webster's lawyers sought to withdraw from further representation, asserting that she would not communicate with them. During an August 8, 2002, hearing on these motions, Ryan-Webster again contended that her use of the fraudulent Certification Applications and Visa Petitions did not fall within the ambit of § 1546(a). On that same day, the court entered an order rejecting this contention, denying her pro se § 2255 motion as premature, and authorizing her trial lawyers to withdraw. *United States v. Ryan-Webster*, No. 02-60-A (E.D. Va. Aug. 8, 2002). This appeal, with newly appointed counsel, followed in due course.

## II.

We review de novo a district court's denial of judgment of acquittal. *United States v. Gallimore*, 247 F.3d 134, 136 (4th Cir. 2001) (citing *United States v. Romer*, 148 F.3d 359, 364 (4th Cir. 1998)). Additionally, our consideration of the ambit of § 1546(a) presents a question of law, which we also review de novo. *United States v. Buculei*, 262 F.3d 322, 331 (4th Cir. 2001) (citing *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497-98 (1982)). By contrast, we review for plain error an issue raised on appeal but not previously asserted in the district court, such as Ryan-Webster's challenge to the jury instructions on Count 1. *See* Fed. R. Crim. P. 30, 52(b); *United States v. Curry*, 512 F.2d 1299, 1303 (4th Cir. 1975). Finally, in assessing the denial of a Rule 29 motion, we view the evidence in the light most favorable to the prosecution. *See Glasser v. United States*, 315 U.S. 60, 80 (1942).

## III.

### A.

In seeking reversal of her convictions on Counts 2, 3, and 5, Ryan-Webster does not contest the fact that the first and third elements of the § 1546(a) offense were proven, that is, (1) that she knowingly "uttered, used, or possessed a document," and (2) that she "knew the document was forged and falsely made." Instead, her primary contention

on appeal relates to the second element of a § 1546(a) offense. She maintains that the Certification Applications (underlying Counts 2 and 5) and the Visa Petitions (underlying Counts 3 and 5) do not qualify as "other document[s]" under § 1546(a).[11] More specifically, she asserts that the Certification Applications and Visa Petitions are neither prescribed by statute or regulation for entry into the United States nor prescribed as evidence of an authorized stay or employment in the United States.

1.

In assessing a statute's scope, we first examine its plain language. *United States v. Sheek*, 990 F.2d 150, 152-53 (4th Cir. 1993) ("Statutory construction must begin with the language of the statute and the court should not look beyond that language unless there is ambiguity or unless the statute as literally read would contravene the unambiguously expressed legislative intent gleaned from the statute's legislative history."); *see also United States v. Buculei*, 262 F.3d 322, 331 (4th Cir. 2001). As explained below, Certification Applications and Visa Petitions fall within the plain language of § 1546(a) because they constitute documents prescribed by statute and regulation for entry into the United States.[12]

First, the Certification Applications constitute documents pre-

---

[11]The court instructed the jury that they had to find the following three elements in order to convict: First, "that the defendant uttered, used, or possessed a document; second, that the document was prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States; and, third, that the defendant knew the document was forged and falsely made."

[12]The court's instruction on the second element of the § 1546(a) offense properly advised the jury, by use of the disjunctive "or," that proof of either prong satisfies the statutory mandate, i.e., the documents were prescribed by statute or regulation (1) for entry or (2) as evidence of authorized stay or employment. Because we resolve this contention on the first of the two alternative prongs — i.e., the documents are prescribed by statute or regulation for entry into the United States — we have no reason to assess whether the other prong of the second element of § 1546(a) was also established.

scribed by both statute and regulation for *entry* into the United States. Pursuant to statutory mandate, an immigrant may not enter this country without "a valid unexpired immigrant visa." 8 U.S.C. § 1181(a). The INS may not issue an employment-based visa unless the DOL has previously issued a Labor Certification.[13] *See id.* § 1153(b)(3)(C) ("An [employment-based] immigrant visa may not be issued to an immigrant . . . until the consular office is in receipt of a determination made by the Secretary of Labor pursuant to the provisions of section 1182(a)(5)(A) of this title."); *id.* § 1182(a)(5)(A)(i) ("Any alien who seeks to enter the United States for the purpose of performing skilled or unskilled labor is inadmissible, unless the Secretary of Labor has determined and certified to the Secretary of State and the Attorney General that — (I) there are not sufficient workers who are able, willing, qualified, . . . and available . . . and (II) the employment of such alien will not adversely affect the wages and working conditions of workers in the United States similarly employed."). Pursuant to the DOL's regulations, an alien's prospective employer must file a Certification Application with the DOL before the DOL can issue a Labor Certification. 20 C.F.R. § 656.21(a) ("[A]n employer who desires to apply for a labor certification on behalf of an alien shall file, signed by hand and in duplicate, a Department of Labor Application for Alien Employment Certification form . . . .").

Pursuant to statute and the applicable regulations, it is clear that: (1) absent the filing of a Certification Application, the DOL is unable to issue a Labor Certification; (2) without a Labor Certification, an immigrant cannot obtain a valid employment-based visa; and (3) in the absence of an employment-based visa, an immigrant cannot legally enter the United States for employment. A Certification Application is therefore a "document" prescribed by both statute and regulation for *entry* into the United States. As such, the district court did not err in denying Ryan-Webster's request for judgment of acquittal on the charges relating to forged Certification Applications.

---

[13]The Labor Certification requirement in § 1153(b)(3)(C) refers to skilled workers, professionals, and other unskilled labor. The aliens for whom Ryan-Webster sought Labor Certifications fall within these categories.

Secondly, Ryan-Webster's use of forged Visa Petitions, as alleged in Counts 3 and 5, also falls within the ambit of § 1546(a), in that Visa Petitions are also prescribed by statute and regulation for *entry* into the United States. The INS limits the number of employment-based immigrants who may receive immigrant visas each year. *See* 8 U.S.C. § 1151(a)(2) (allowing certain number of employment-based visas each fiscal year); *id.* § 1151(d)(1) (specifying number of visas that may be issued). As such, an alien must be classified for employment purposes before receiving an immigrant visa. *See id.* § 1153(b) (distributing visas allotted for employment-based workers among (1) priority workers, (2) members of professions holding advanced degrees or aliens of exceptional ability, (3) skilled workers, professionals, and other workers, (4) qualified special immigrants, and (5) employment creation). And the regulations of the INS specifically prescribe that "[a] petition to classify an alien . . . *must* be filed on Form I-140, Petition for Immigrant Worker." 8 C.F.R. § 204.5(a) (emphasis added).

Our analysis of whether a Visa Petition constitutes a document under § 1546(a) is simple: (1) absent the filing of a Visa Petition, an alien cannot be classified by the INS; (2) absent classification by the INS, an alien cannot obtain an employment-based visa; and (3) in the absence of an employment-based visa, an alien may not legally enter the United States for purposes of employment. Accordingly, a Visa Petition constitutes a document prescribed by statute and regulation for *entry* into the United States, and the district court did not err in denying judgment of acquittal on the Visa Petition issue.

Notwithstanding these seemingly simple analyses, Ryan-Webster maintains that, because neither a Certification Application nor a Visa Petition constitutes the ultimate document *presented* to immigration authorities for entry into the United States, neither falls within the ambit of § 1546(a). She contends that Certification Applications and Visa Petitions *alone* are insufficient for entry into the United States and that an immigrant must ultimately obtain an immigrant visa. Although accurately stated, this fact does not remove Certification Applications and Visa Petitions from the reach of § 1546(a). Certification Applications and Visa Petitions may be insufficient, in and of themselves, to authorize entry into the United States, but they are plainly prescribed by law as prerequisites thereof. As explained

above, absent the filing of Certification Applications and Visa Petitions, employment-based immigrant visas cannot be issued by the INS. The fact that other documents may also be utilized by the authorities for entry purposes does not alter the statutory and regulatory mandates governing Certification Applications and Visa Petitions.[14]

2.

Pursuant to the foregoing, the provisions of § 1546(a) are unambiguous, and the term "other document[s]" as used therein encompasses the Certification Applications and Visa Petitions at issue here. As such, our analysis of whether they are prescribed for entry into the United States must end, unless Congress has clearly expressed an intent to the contrary. *See Buculei*, 262 F.3d at 331; *Sheek*, 990 F.2d at 152-53. In this instance, Congress has not expressed a contrary intent. Instead, Congress, in amending the statute in 1986, expressed its intent to broaden the types of documents included within the reach of § 1546(a).

Prior to 1986, § 1546(a) specifically encompassed visas, permits, and other documents *required for entry* into the United States. The Supreme Court had occasion to construe the predecessor statute in 1971, and it did so narrowly. In *United States v. Campos-Serrano*, 404 U.S. 293 (1971), the Court affirmed the reversal of defendant's conviction under the predecessor § 1546(a),[15] ruling that counterfeit

---

[14]Our dissenting colleague maintains that Ryan-Webster should have been charged under the fourth paragraph of § 1546(a), rather than under the first paragraph thereof, and that the prosecution's failure to charge under the fourth paragraph constitutes reversible error. *See ante* at 19-21. With all respect, we disagree. The issue we face is not whether the fourth paragraph of § 1546(a) is a better fit for Counts 2, 3, and 5, but whether the first paragraph of § 1546(a) is a proper statutory basis for those charges. And as our analysis reflects, Counts 2, 3, and 5 are valid. When criminal conduct contravenes more than one statute, it is within the prosecutor's discretion to choose the provision under which to charge. *See United States v. Brewer*, 528 F.2d 492, 498 (4th Cir. 1975) ("When the conduct violates overlapping statutes, the prosecutor can elect to charge the defendant under either."); *see also United States v. Batchelder*, 442 U.S. 114, 123-24 (1979).

[15]The relevant portion of the predecessor § 1546(a) provided in relevant part: "whoever . . . knowingly forges, counterfeits, alters, or falsely

alien registration receipt cards did not fall within its scope. The Court interpreted § 1546(a) to include only a narrow class of "entry documents," and it observed that, although an alien registration receipt card can sometimes be used by an alien to reenter the United States, its essential purpose is "to identify the bearer as a lawfully registered alien residing in the United States." *Id.* at 300. According to the Court, "[t]he language of § 1546 denotes a very special class of 'entry' documents — documents whose primary *raison d'être* is the facilitation of entry into the country." *Id.* at 299.

In 1986, Congress amended § 1546(a) to expand its reach. Significantly, Congress replaced the phrase "required for entry" with the phrase "prescribed by statute or regulation for entry," which is the operative terminology that we must assess. In doing so, Congress expressed the clear intention of broadening the types of documents encompassed by § 1546(a). *See* H. Rep. No. 99-682(I), at 94 (1986) (explaining that 1986 amendments expanded types of documents within § 1546(a)); S. Rep. No. 99-132, at 31 (1985) (same). As the Fifth Circuit explained in construing the 1986 amendments, "Congress expanded the proscription of the statute from being limited to *required* entry documents to *any* documents *prescribed either by statute or by regulation* for entry into the United States." *United States v. Osiemi*, 980 F.2d 344, 346 (5th Cir. 1993) (emphasis in original) (holding that counterfeit passports fall within "prescribed" language of § 1546(a) even though they are not always "required for entry"); *see also United States v. Rahman*, 189 F.3d 88, 118-19 (2d Cir. 1999), *cert. denied*, 528 U.S. 982 (2000) (agreeing with *Osiemi* that plain language of § 1546(a) encompasses foreign passports). In specifying documents *prescribed by statute or regulation for entry* into the United States, rather than just those documents *required for entry*, Congress expanded § 1546(a) to include documents such as the forged Certification Applications and Visa Petitions underlying Ryan-Webster's convictions. In such circumstances, the district court did

makes any immigrant or nonimmigrant visa, permit, or other document required for entry into the United States, or utters, uses, [or] possesses any such visa, permit, or document, knowing it to be forged, counterfeited, altered, or falsely made . . . [commits a felony]."

not err when it denied judgment of acquittal as to Counts 2, 3, and 5.[16]

B.

Ryan-Webster next contends that the district court erred when it identified an alleged unindicted co-conspirator, not named by the grand jury, in its instructions to the jury. In instructing the jury, the court stated, without objection: "Now, evidence has been received in this case that a person, Nora Azenon-Gomez, the defendant's legal assistant, was a co-conspirator of the defendant and said things during the existence or life of the alleged conspiracy in order to further advance its goals." Ryan-Webster contends that this instruction constituted an impermissible and erroneous modification of a form instruction spelled out in a jury practice textbook. The form instruction provides that: "Evidence has been received in this case that *certain persons*, who are alleged in . . . the indictment to be co-conspirators . . ., have done or said things during the existence or life of the alleged conspiracy in order to further or advance its goal[s]." O'Malley, Grenig & Lee, *Federal Jury Practice and Instructions* § 31.06 (5th ed. 2000) (emphasis added). Ryan-Webster's contention on this point has two prongs: (1) that the court's reference to Azenon-Gomez by name undermined the jury's fact-finding role; and (2) that the court's statement that "evidence has been received" that Azenon-Gomez was a co-conspirator constituted a "neon sign," effectively instructing the jury to find Ryan-Webster guilty. As explained below, this contention lacks merit and must be rejected.

---

[16]Our dissenting colleague maintains that our decision renders the word "application" in the fourth paragraph of § 1546(a) "entirely superfluous." *See ante* at 20. We disagree. While the fourth paragraph of § 1546(a) deals with documents containing *false statements*, the first paragraph of § 1546(a) directly concerns documents containing, inter alia, *forgeries*. And a person may make a false statement (chargeable under the fourth paragraph) without forging an application (chargeable under the first paragraph). Had Ryan-Webster made false statements but not forged signatures on these applications, she may have been properly chargeable under the fourth paragraph of § 1546(a) and not properly chargeable under its first paragraph.

First of all, because Ryan-Webster failed to object to this instruction at trial, we review her contention for plain error only. In order to award relief on a plain error contention, we must be able to "(1) identify an error, (2) which is plain, (3) which affects substantial rights, and (4) which 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Brewer*, 1 F.3d 1430, 1434-35 (4th Cir. 1993) (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)). Because there was no error in the instruction complained of, the first prong of this test is not met, and we need not assess the other aspects of the plain error analysis.

In the circumstances of this trial, the court's use of the witness's proper name in its instruction to the jury was appropriate. As Ryan-Webster acknowledges, it was obvious under the evidence that Azenon-Gomez was a co-conspirator; indeed, she was the only employee at Ryan & Webster during the fraud scheme. Moreover, Azenon-Gomez testified that she aided and assisted Ryan-Webster in falsifying Certification Applications and Visa Petitions.

Finally, the instruction as given, that "evidence has been received" that "Azenon-Gomez was a co-conspirator," constituted permissible comment on the evidence by the trial court. As we have heretofore observed, "the trial judge, in charging the jury, may comment upon the evidence, so long as it is also clear that the jury determines all matters of fact . . . ."[17] *United States v. Godwin*, 272 F.3d 659, 678

---

[17]As an elementary principle, we do not examine jury instructions in isolation. Instead, "[i]n reviewing the adequacy of the instructions, we 'accord the district court much discretion and will not reverse provided that the instructions, taken as a whole, adequately state the controlling law.'" *United States v. Wills*, 346 F.3d 476 (4th Cir. 2003) (quoting *Teague v. Bakker*, 35 F.3d 978, 985 (4th Cir. 1994)). In giving the contested instruction to the jury, the court further explained that "[s]uch acts and statements of Nora Azenon-Gomez *may* be considered by you in determining whether or not the Government has proven the charges in count one of the indictment against the defendant." Additionally, the court explained that "[n]othing I say in these instructions is to be taken as an indication that I have an opinion about the facts of the case or what that opinion is. It's not my function to determine the facts. It is yours." Viewing the instructions as a whole, as we must, the jury was adequately advised of its role as the finder of fact.

n.22 (4th Cir. 2001) (citing *Quercia v. United States*, 289 U.S. 466, 470 (1933)). The court's reference to Azenon-Gomez constituted a fair characterization of the evidence, and the instruction did not express any opinion on whether the evidence was either convincing or sufficient. In these circumstances, the instruction was not erroneous, and this assignment of error must be rejected.

### IV.

Pursuant to the foregoing, we affirm Ryan-Webster's convictions and sentence.

*AFFIRMED*

WILLIAMS, Circuit Judge, concurring in part and dissenting in part:

Section 1546(a) of Title 18 is a comprehensive statute that indisputably prohibits Ryan-Webster's falsification of Certification Applications (ETA-750s) and Visa Petitions (I-140s). This conduct is specifically and unambiguously proscribed by the fourth unnumbered paragraph of § 1546(a), which prohibits persons from "knowingly mak[ing] under oath, or . . . penalty of perjury . . . any false statement with respect to a material fact in any *application*, affidavit, or other document required by the immigration laws or regulations prescribed thereunder." 18 U.S.C.A. § 1546(a) (West 2000 & Supp. 2003) (emphasis added). The Government, for reasons unknown, chose to charge Ryan-Webster only under the first paragraph of § 1546(a), which makes it a crime knowingly to falsify "any immigrant or nonimmigrant visa, permit, border crossing card, alien registration receipt card, or other document prescribed by statute or regulation *for entry into or as evidence of authorized stay or employment in the United States*." *Id.* (emphasis added). Because I disagree with my colleagues' conclusion that the forms that Ryan-Webster falsified here are "other documents" within the meaning of the first paragraph, I respectfully dissent from Parts III.A. and IV. of the panel's opinion. I concur in the remainder of the opinion.

In interpreting statutes, our goal "is always to ascertain and implement the intent of Congress." *Scott v. United States*, 328 F.3d 132,

138 (4th Cir. 2003). Accordingly, "[t]he first step of this process is to determine whether the statutory language has a plain and unambiguous meaning." *Id.* at 139 (citing *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002)). If the statutory language is unambiguous and the statutory scheme is coherent and consistent, the inquiry ceases. *Id.*

When assessing the ambiguity, or lack thereof, of statutory language, courts "generally give words their ordinary, contemporary, and common meaning." *Id.* But, the language itself is not the sole determinant of meaning, or even of whether the language is ambiguous. Courts also must refer to "the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). At bottom, my colleagues' error lies in their failure to abide by this principle of statutory construction. The majority's analysis, *ante* at 9-14, has some persuasive appeal if one reads the first paragraph's catch-all phrase in isolation: the phrase "other documents prescribed by statute or regulation for entry into . . . the United States," without any context, could plausibly be interpreted to cover application documents like the ETA-750 and the I-140. 18 U.S.C.A. § 1546(a). These documents, as the majority correctly notes, are "prescribed by statute or regulation" and, although they do not themselves allow entry into the country, they are submitted as part of one of the avenues through which an immigrant might gain the right to lawfully "enter" the country. When read in context, however, the first paragraph's reach is unambiguously narrower.

Two canons of construction instruct us how properly to ascertain the meaning of statutory language from the context in which it is used. The first is the principle of *ejusdem generis* — *i.e.*, "when a general word or phrase follows a list of specific persons or things, the general word or phrase will be interpreted to include only persons or things of the same type as those listed." Black's Law Dictionary 535 (7th ed. 1999); *see also United States v. Parker*, 30 F.3d 542, 552-53 n.10 (4th Cir. 1994) (applying *ejusdem generis* principle, and defining it as providing that "a general statutory term should be understood in light of the specific terms surrounding it" (internal quotation marks omitted)). Here, the first paragraph presents a textbook *ejusdem generis* scenario: a general phrase ("other document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States"), the scope of which we are cal-

led upon to interpret, follows a list of specific things ("any immigrant or nonimmigrant visa, permit, border crossing card, alien registration receipt card"). *See* 18 U.S.C.A. § 1546(a). Accordingly, the *ejusdem generis* canon compels us to constrain the scope of the general phrase to "other documents" of the same type as those specifically identified.

The enumerated documents in the first unnumbered paragraph have common characteristics, none of which are shared by the ETA-750 or the I-140. Each of these items is a final document issued by the government that has some independent evidentiary significance respecting the legality of the bearer's entry into or stay in the country. For example, the "immigrant visa" is a document "issued by a consular officer" signifying that the lawful bearer is "an eligible immigrant" under the provisions of the federal immigration laws. *See* 8 U.S.C.A. § 1101(a)(16) (West 1999). Likewise, the "border crossing card" is a document issued "by a consular officer or an immigration officer" signifying that the lawful bearer is "lawfully admitted for permanent residence," or is a "resident in foreign contiguous territory" to whom the card was issued "for the purpose of crossing over the borders between the United States and foreign contiguous territory" in accordance with the conditions of issuance. 8 U.S.C.A. § 1101(a)(6). The "alien registration receipt card" similarly is a document issued by the government that signifies that the lawful bearer has complied with the requirements of the Alien Registration Act of 1940. *See* 8 U.S.C.A. § 1304(d) (West 1999). Because each of these documents signifies that the holder has been found by the government to have complied with some aspect of the immigration laws, they are documents of a type that an alien or immigrant might be required to present to immigration authorities in order to gain entry into or prove the lawfulness of one's stay in the United States. Accordingly, pursuant to the principle of *ejusdem generis*, the catch-all phrase "other document prescribed by statute for entry into . . . the United States" must be limited to documents of the same type — *i.e.*, final documents issued by the government that have independent evidentiary significance that one might be expected to present to an immigration official, either to gain entry into the country or to prove the lawfulness of one's stay in the country.

The ETA 750 and I-140 forms have none of these characteristics. First, the government plays no role in the completion of these docu-

ments. Applicants and applicants' employers fill them out and submit them. Second, the documents have no evidentiary significance regarding the immigration status of the holder — they are simply applications, representing nothing more than the applicant's and/or his employer's desire that the applicant gain the right to enter or remain in the country legally. Consequently, these forms are not the type of documents that a person might present to immigration officials to gain entry into the country. In sum, the ETA-750 and the I-140 are not documents of the type enumerated in the first paragraph, and therefore they do not fall within that paragraph's catch-all phrase.

A second interpretive canon, the rule against superfluity, confirms that this is the proper construction of the first paragraph. Under the rule against superfluity, "[w]here possible, we must give effect to every provision and word in a statute and avoid any interpretation that may render statutory terms meaningless or superfluous." *Scott*, 328 F.3d at 139 (citing *Freytag v. Comm'r Internal Revenue*, 501 U.S. 868, 877 (1991)). The interpretation of the first paragraph that the majority adopts renders superfluous much of the fourth paragraph, if not the paragraph in its entirety.

As noted above, the fourth paragraph of § 1546(a) makes it a crime for persons to "knowingly mak[e] under oath, or . . . penalty of perjury . . . any false statement with respect to a material fact in any *application*, affidavit, or other document required by the immigration laws or regulations prescribed thereunder." 18 U.S.C.A. § 1546(a) (emphasis added). Fairly read, the majority's interpretation of the catch-all phrase encompasses any document required by statute or regulation that an immigrant must submit under any immigration program. At a minimum, the majority's interpretation renders the word "application" in the fourth paragraph entirely superfluous because, if the majority's interpretation of the first paragraph includes application forms like the ETA 750 and the I-140, then it encompasses all other similar "application" documents. Moreover, the majority's failure to cabin the first paragraph's catch-all phrase in any way renders superfluous the rest of the paragraph as well. After all, "affidavits [and] other document[s] required by the immigration laws or regulations prescribed thereunder" are documents "prescribed by statute or regulation" as part of some process governing the entry or stay of immi-

grants in this country, and as such, they would fall within the majority's capacious construction.\*

In summary, 18 U.S.C.A. § 1546(a), properly construed, is unambiguous as it relates to falsified forms ETA 750 and I-140. Falsification of such forms is covered under the fourth paragraph of the statute and not the first. Therefore, the Government charged Ryan-Webster under the wrong provision of § 1546(a), and the district court erred both in denying Ryan-Webster's motion for judgment of acquittal as to Counts 2, 3 and 5, and in instructing the jury that forms ETA 750 and I-140 qualified as documents covered by the first paragraph. Accordingly, I would reverse Ryan-Webster's conviction as to Counts 2, 3 and 5, and remand the case for re-sentencing. Because my colleagues conclude otherwise, I respectfully dissent from Parts III.A. and IV. of the panel's opinion.

---

\*In footnote 16 of the majority opinion, my colleagues contend that their construction of the first paragraph does not render the word "application" in the fourth paragraph entirely superfluous because the first paragraph deals with forgeries, a type of conduct different from the making of false statements, which is covered by the fourth paragraph. The first paragraph, however, is concerned with more than just forgery — it makes criminal the use or possession of documents known to be "forged, counterfeited, altered *or falsely made*." 18 U.S.C.A. § 1546(a) (emphasis added). Therefore, the majority's suggestion that "[h]ad Ryan-Webster made false statements but not forged signatures on these applications, she may have been properly chargeable under the fourth paragraph of § 1546(a) and not properly chargeable under its first paragraph," *see ante* at 15 n.16, is, I respectfully submit, not accurate. An application with false statements is without question one that is "falsely made."