**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 06-4628**

———————————

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

TRADON MARQUEZ DRAYTON,

        Defendant - Appellant.

———————————

Appeal from the United States District Court for the Western District of Virginia, at Abingdon.  James P. Jones, Chief District Judge.  (1:04-cr-00009-JPJ)

———————————

Argued:  February 1, 2008      Decided:  March 4, 2008

———————————

Before MOTZ, KING, and GREGORY, Circuit Judges.

———————————

Affirmed by unpublished per curiam opinion.

———————————

**ARGUED:** Bettye Stephanie Commander, Charlottesville, Virginia, for Appellant.  Anthony Paul Giorno, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellee.  **ON BRIEF:** John L. Brownlee, United States Attorney, Roanoke, Virginia, for Appellee.

———————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

A jury convicted Tradon Drayton of conspiring to possess with intent to distribute five grams or more of cocaine base ("crack cocaine"), in violation of 21 U.S.C. § 846 (2000) ("Count Five"); using and carrying a firearm during and in relation to, and possessing a firearm in furtherance of, a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) (2000) ("Count Seven"); violating § 924(c) while causing the death of a person through the use of a firearm, in violation of 18 U.S.C. § 924(j) (2000) ("Count Eight"); possessing a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1) (2000) ("Count Nine"); and firing a weapon into a group of two or more persons in furtherance of a major drug offense, in violation of 18 U.S.C. § 36(b)(1) (2000) ("Count Ten"). The district court sentenced Drayton to concurrent 188-month sentences on Counts Five, Nine, and Ten. Additionally, the court sentenced Drayton to a consecutive 60-month sentence on Count Seven, see 18 U.S.C. § 924(c)(1)(A)(I) (2000), and a consecutive 300-month sentence on Count Eight, see 18 U.S.C. § 924(c)(1)(C)(I) (2000). Drayton appeals. Finding no error, we affirm.

I.

Although Drayton's convictions include events reaching back to May 1999, his current claims focus exclusively on the incidents of

- 2 -

July 16, 1999, so we recount only those facts. On that date, Drayton and several associates visited an apartment complex on Poplar Knob Road in Galax, Virginia, because they had earlier heard that Drayton's pet snake had met an untimely demise at the hands of Billy King, the boyfriend of Poplar Knob resident Monica Beamer. At Beamer's apartment, a noisy confrontation between Drayton and King ensued, during which a rival crack cocaine dealer known as "Big D" entered Beamer's apartment brandishing a gun and declaring to all concerned, "Y'all messed up my money." After an associate of Big D's named James Thornton defused the situation, Drayton and his associates drove away from the apartment complex, only to turn around on Drayton's command a short distance away. Drayton exited the vehicle and waited by the roadside in order to ambush Big D's car, which appeared several minutes later. After Drayton fired several rounds from the side of the road, Big D emerged from the car, exchanging gunfire with Drayton and inadvertently shooting Thornton, the car's driver, in the back of the head. Drayton and Big D both fled, and when police arrived at the scene, only Thornton's body and the car remained.

II.

A.

Drayton first argues the district court erred when it denied his Fed. R. Crim. P. 29 motion for judgment of acquittal on Count

Eight. We review a district court's decision to deny a Rule 29 motion de novo. United States v. Ryan-Webster, 353 F.3d 353, 359 (4th Cir. 2003). When, as here, the motion is based on an allegation of insufficient evidence, the verdict must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it. See Glasser v. United States, 315 U.S. 60, 80 (1942). "[S]ubstantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc). We review both direct and circumstantial evidence and permit the Government the benefit of all reasonable inferences from the facts proven to those sought to be established. United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982). Witness credibility is within the sole province of the jury, and we will not reassess the credibility of testimony. United States v. Saunders, 886 F.2d 56, 60 (4th Cir. 1989).

Drayton contends that the shooting on July 16, 1999, did not occur "in relation to" a drug trafficking crime, as required under § 924(c). Yet at trial the Government introduced substantial evidence that specifically linked Thornton's death with Drayton's use of a firearm in relation to a drug trafficking crime. Christopher Dattore testified that on July 16, 1999, he had gone to the Poplar Knob apartments and purchased crack cocaine from an

- 4 -

associate of Drayton, J. J. Reeves, as Drayton himself stood by, holding a quantity of crack cocaine. Drayton then approached Dattore and inquired why he had started buying drugs from Big D rather than Drayton. As Dattore excused himself, he observed that Drayton had an automatic handgun tucked into his front belt. Furthermore, an eyewitness of the altercation in Beamer's apartment testified at trial that Big D's statement, "Y'all messed up my money," meant that Big D was not going to tolerate Drayton "starting trouble with everybody else" and interfering with Big D's "crack" cocaine business. Finally, a 2004 cellmate of Drayton's, Randy Rader, testified that Drayton told him that "him and another person had got into an altercation, and that over a business transaction," clarifying that "the only business [Drayton] ever spoke about was cocaine." Taking this testimony in the light most favorable to the Government, we can only conclude that the jury's verdict on Count Eight is supported by substantial evidence.

### B.

Drayton next argues the district court erred when it denied his motion to dismiss the indictment. Drayton claims that the delay between the dates of alleged offense conduct in July 1999 and his federal indictment in February 2004 prejudiced him. Specifically, he maintains that the delay deprived him of the ability to locate alibi witnesses and preserve critical evidence like Thornton's automobile, which was disposed of after Drayton's

- 5 -

state trial in 2000, in which he was acquitted of shooting at an occupied vehicle. Drayton alleges that the delay violated his due process rights.[1]

To determine whether pre-indictment delay violates the Due Process Clause, we must examine: (1) whether Drayton can show he has suffered any actual, substantial prejudice; and (2) if so, whether the reasons for the delay justify the prejudice to him. See United States v. Automated Med. Labs., Inc., 770 F.2d 399, 403-04 (4th Cir. 1985); see also Jones, 94 F.3d at 907. Drayton bears the burden of proving actual prejudice, and he may not rely on speculation to do so. See Automated Med. Labs., Inc., 770 F.2d at 403-04. Review of the evidence indicates that Drayton has failed to demonstrate actual prejudice.

First, regarding the missing witnesses, the testimony of one, Billy King, would have been at best cumulative because several other eyewitnesses to the argument in Beamer's apartment testified at trial and Drayton failed to assert what, if any, additional evidence King would have provided. Although Drayton does claim that his other witness, Cindy Rican, would allegedly have provided an alibi concerning his whereabouts on July 16, her testimony

---

[1]Drayton also claims that this delay violated his right to a speedy trial under the Sixth Amendment. However, this right does not attach until the defendant has been indicted or arrested. See Jones v. Angelone, 94 F.3d 900, 906 n.6 (4th Cir. 1996)

remains completely speculative, with nothing more than Drayton's own assertions offered as support.

Second, although Drayton alleges that the passage of time has irreparably altered the scene of the crime, he fails to specify how such changes have prejudiced his trial in any particular fashion. We certainly will not speculate on this question given the photographs and videotape that the Government submitted to the jury that depicted the scene of the shooting.

Drayton's third and final due process claim concerns the destruction of Thornton's automobile. At trial, Drayton's ballistics expert testified that he was unable to determine from photographs the caliber of gun that caused the bullet holes in the car door -- Big D's 9mm or Drayton's .22 caliber. However, in light of the extensive other evidence presented at trial, we find that Drayton has failed to show "that he was meaningfully impaired in his ability to defend against the state's charges to such an extent that the disposition of the criminal proceeding was likely affected." Jones, 94 F.3d at 907. Even if the bullet holes could have been definitively linked to Big D's gun, it would not have conclusively demonstrated that Drayton had not fired on Big D, only that Big D had returned fire -- a fact that no one disputes.

Furthermore, the Government offered substantial evidence at trial that Drayton fired at Thornton's vehicle. Two of Drayton's own associates, Hans Reeves and Sherrard Gathers, offered

eyewitness testimony that after driving away from the apartment complex, Drayton directed Gathers to make a U-turn and pull off the road, where he waited in ambush for several minutes. Both men described how Drayton then emerged from the roadside and fired repeatedly at Big D's car. Moreover, police recovered four .22 shells at the crime scene in addition to a discarded .22 caliber pistol that Frederick Voss testified he had sold to Drayton earlier that July. The Government also introduced ballistics tests demonstrating that the recovered .22 casings were fired from the gun sold to Drayton by Voss. In light of this evidence, we conclude that Drayton has failed to prove that he suffered actual prejudice as a result of pre-indictment delay.[2]

## C.

Drayton's final claim is that the district court improperly sentenced him to a consecutive 300-month term on Count Eight. Drayton contends the district court should not have treated Count

---

[2]Drayton also contends that the Government's destruction of evidence constitutes a due process violation. However, Drayton fails to demonstrate that the missing vehicle "possess[es] an exculpatory value that was apparent before the evidence was destroyed," California v. Trombetta, 467 U.S. 479, 488-89 (1984), or that there was "bad faith on the part of the police," Arizona v. Youngblood, 488 U.S. 51, 57-58 (1988). Drayton argues that the Youngblood "bad faith" requirement does not apply in the present case because the exculpatory value of the car door is clear from the fact it was preserved throughout Drayton's state court trial. But Drayton's own forensic expert stated that the car door might also provide inculpatory evidence that Drayton's gun caused the bullet holes. For these reasons, Drayton's failure to preserve evidence claim also fails.

Eight as a second or subsequent § 924(c) conviction for sentencing purposes, because that count charged a violation of the current 18 U.S.C. § 924(j) and relied on the same facts proven in Count Seven. Drayton claims his conviction under Count Eight does not count as a second § 924(c) conviction and asserts the sentencing provision in § 924(c)(1)(C)(I) is inapplicable. Because the jury found him responsible for manslaughter on Count Eight, Drayton argues that he should have been sentenced under the federal manslaughter statute. See 18 U.S.C. § 1112 (2000) (providing ten-year maximum for voluntary manslaughter).

We agree with the district court's finding that Counts Seven and Eight serve as distinct convictions under § 924(c) for the purpose of sentencing. Cf. United States v. Battle, 289 F.3d 661, 666 (10th Cir. 2002); United States v. Allen, 247 F.3d 741, 769 (8th Cir. 2001), vacated on other grounds, 536 U.S. 953 (2002). Drayton's interpretation "would lead to the odd result that a defendant convicted under § 924(c) is subject to an additional consecutive sentence only in situations that do not result in a death caused by use of the firearm." Allen, 247 F.3d at 769. We therefore conclude the district court sentenced Drayton properly.

III.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.