UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 04-4250

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JOE ANTHONY BROWN,

Defendant - Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Richard L. Voorhees, District Judge.  (CR-01-185-V)

Argued:  December 3, 2004          Decided:  April 25, 2005

Before LUTTIG, TRAXLER, and KING, Circuit Judges.

Affirmed in part, vacated in part, and remanded by unpublished per curiam opinion.

**ARGUED:** Richard Deke Falls, BARNETT & FALLS, Charlotte, North Carolina, for Appellant.  Karen Marston Wilson, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.  **ON BRIEF:** Gretchen C. F. Shappert, United States Attorney, Charlotte, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Joe Anthony Brown appeals his convictions and sentence on three drug- and firearm-related charges. Brown maintains that the district court erred in denying his motions for judgment of acquittal on two of those counts, and in sentencing him to a prison term of life plus 134 months. As explained below, we affirm Brown's convictions. However, we vacate his sentence and remand for resentencing in light of United States v. Booker, 125 S. Ct. 738 (2005), and its progeny.

I.

In 2001, a grand jury in the Western District of North Carolina charged Brown in three counts of a nine-count indictment with: (1) conspiracy to possess with intent to distribute more than fifty grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (the "drug conspiracy count"); (2) possession with intent to distribute more than five grams of cocaine base, and aiding and abetting the same, in contravention of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (the "drug possession count"); and (3) use, carrying, and discharge of a firearm during and in relation to the drug conspiracy, and possession and discharge of the firearm in furtherance of the conspiracy, in violation of 18 U.S.C. § 924(c)(1) (the "firearm count"). Also charged in the indictment were Linwood Kenny ("Kenny"), and Byron Tate, Darius Tate, and Lamont Tate (individually, "Byron," "Darius," and

2

"Lamont," and collectively, the "Tate brothers"). Kenny and the Tate brothers each entered into plea agreements with the Government and testified against Brown at trial.

Brown's trial began on January 29, 2003. The prosecution presented evidence of a drug conspiracy involving Brown, Kenny, the Tate brothers, and others to distribute crack cocaine in the Reid Park neighborhood of Charlotte, North Carolina, between mid-1997 and August 1999. Kenny and the Tate brothers were "weight dealers" with close business and personal ties to each other, whereas Brown was a "street dealer." Special Agent Rodney Blacknall of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("BATF"), who testified for the prosecution as an expert in narcotics and firearms, explained that weight dealers sell drugs in bulk to street dealers, who then resell the drugs in smaller quantities to addicts and other users "at the bottom of the line."

According to the trial testimony, Brown bought crack on a few occasions from Byron and Darius, but more often obtained it from Kenny, to "cut it up" and sell in smaller quantities on the street. Kenny would sometimes "front" drugs to Brown, i.e., allow Brown to take the drugs now and pay for them later. BATF Agent Blacknall testified that, in his experience, weight dealers "front" only to street dealers whom they trust and have dealt with on numerous occasions; based on that established relationship, the weight dealer knows that the street dealer will sell the drugs and make a

3

profit, and then will return to pay the debt and buy even more drugs from the weight dealer.

The trial evidence showed that the relationship between Brown (on the one hand), and Kenny and the Tate brothers (on the other hand), took a violent turn in August 1999, after Kenny sold Brown a quantity of "bad dope" without refunding Brown's payment for it. Brown shot at Byron on August 17, 1999, while Byron was sitting in a car in his grandmother's driveway in Charlotte. Brown acknowledged to a friend that a retaliatory shooting was likely, but nonetheless attended a party the following night in the front yard of the nearby home of his girlfriend, Tawania Mason. After Brown's friend expressed concern that those gathered for the party were in danger, Brown responded that "[i]t's straight" and indicated that he was carrying a gun. Sometime thereafter, Kenny, Lamont, Darius, and a cohort arrived by car, and a shootout with Brown ensued. Several persons were wounded by the gunfire, and Mason was killed.[1]

After the prosecution presented its case-in-chief, Brown made a motion for judgment of acquittal on the drug conspiracy and firearm counts, which the district court denied. The defense then

---

[1]As part of their plea agreements, Kenny and Lamont pleaded guilty to murdering Mason in the course of the drug conspiracy, and each of them was sentenced to 30 years of imprisonment. Brown was not charged for his participation in the shootout.

rested without presenting any evidence. On January 31, 2003, the jury found Brown guilty on each of the three charges against him.

The district court conducted a sentencing hearing on February 19, 2004, and entered its judgment on March 23, 2004. The court calculated Brown's sentence in accordance with the then-mandatory Sentencing Guidelines. In determining Brown's sentencing range, the court grouped the drug conspiracy and drug possession counts together. See USSG § 3D1.2(d) (2002). Brown was assigned a base offense level of 36 for the grouped counts, because he was found responsible for between 500 grams and 1.5 kilograms of crack. See id. § 2D1.1(c)(2).[2] The court then applied the cross-reference for murder, and the base offense level became 43. See id. § 2D1.1(d)(1) (directing court to utilize base offense level for first-degree murder "[i]f a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111"); see also id. § 2A1.1 (providing for base offense level of 43 for first-degree murder).[3] With an offense level of 43, as well as a criminal

---

[2]At the sentencing hearing, the court overruled Brown's objection to the drug quantity finding of 500 grams to 1.5 kilograms, observing that "[t]he drug quantity was found by the jury and the court believes the evidence supported that." However, the jury specified only that the drug conspiracy and drug possession counts together involved 55 grams or more of crack, as charged in the indictment, thus qualifying Brown for an offense level of 32. See USSG § 2D1.1(c)(4) (2002).

[3]The court applied the murder enhancement to Brown because of the killing of Mason (Brown's girlfriend) during the shootout on August 18, 1999. The prosecution had urged that enhancement on the ground that, after shooting at Byron the previous day, Brown knew

history category of II, the applicable sentence on the grouped drug counts was life imprisonment. The statutory maximum sentence on the drug conspiracy count was life, see 21 U.S.C. § 841(b)(1)(A), and on the drug possession count it was forty years, see id. § 841(b)(1)(B). The court imposed concurrent sentences of life on the drug conspiracy count and sixty months on the drug possession count.[4]

As for the firearm count, the Guidelines required the court to impose the minimum term of imprisonment mandated by 18 U.S.C. § 924(c), which was a consecutive sentence of ten years. See USSG § 2K2.4(b) (2002). The prosecution moved for an upward departure to life imprisonment on the firearm count, in the event that the sentencing court declined to apply the murder enhancement on the grouped drug counts. See id. § 4A1.3 (permitting court to impose

---

that a retaliatory shooting was likely and had armed himself with a loaded handgun in anticipation of it, yet he allowed Mason and others to be targets anyway. The court observed that Brown "through his actions put in jeopardy the lives of others including the deceased in a very foreseeable fashion." The court then concluded that, because those circumstances supported a finding of second-degree murder within 18 U.S.C. § 1111, the murder cross-reference was applicable, relying on the Eighth Circuit's decision in United States v. Graham, 323 F.3d 603, 609-10 (8th Cir. 2003) (affirming murder enhancement where coconspirator died in explosion and fire at defendant's methamphetamine laboratory, because defendant had been aware of serious risk of death or serious bodily injury associated with operation of laboratory).

[4]Based only on the drug quantity found by the jury, and without applying the murder enhancement predicated on facts found by the judge, Brown's applicable sentencing range would have been 135 to 168 months of imprisonment on the grouped drug counts.

sentence departing from otherwise applicable Guidelines range "[i]f reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct"). Even though it applied the murder enhancement on the grouped drug counts, the court also departed upward from the Guidelines sentence on the firearm count (although not to life imprisonment).[5] The court imposed a sentence on the firearm count of 134 months of imprisonment, to run consecutively to the prison term on the grouped drug counts, resulting in a total term of life plus 134 months.

Brown filed a timely notice of appeal. On June 7, 2004, he filed his opening brief, contending that the district court erred in denying his motion for judgment of acquittal on the drug conspiracy and firearm counts, and in calculating his sentence under the Sentencing Guidelines. Shortly after the Supreme Court issued its decision in Blakely v. Washington, on June 24, 2004, Brown then filed a supplemental opening brief, challenging his sentence on Sixth Amendment grounds. See 124 S. Ct. 2531, 2537-38

---

[5]In support of its motion for upward departure, the prosecution presented evidence that, on August 12, 2000, following the incidents at issue herein, Brown had shot Byron five times at point-blank range while stating, "It ain't over." The sentencing court concluded that Brown had attempted to murder Byron, and that a state court conviction on such an offense would have yielded Brown three additional criminal history points, elevating his criminal history category from II to III. Accordingly, the court added 14 months to the Guidelines sentence of 120 months (10 years) on the firearm count.

7

(2004) (holding that sentence imposed under Washington State sentencing scheme violated Sixth Amendment because it was enhanced based on judge-found facts). We address Brown's contentions in turn.

## II.

Brown first contends that the district court erred in denying his motion for judgment of acquittal on the drug conspiracy and firearm counts. We review de novo the denial of a motion for judgment of acquittal. See United States v. Ryan-Webster, 353 F.3d 353, 359 (4th Cir. 2003). We must sustain the jury verdict "'if there is substantial evidence, taking the view most favorable to the Government, to support it.'" United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc) (quoting Glasser v. United States, 315 U.S. 60, 80 (1942)). We define "substantial evidence" as "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." Id. And we "remain cognizant of the fact that the jury, not the reviewing court, weighs the credibility of the evidence and resolves any conflicts in the evidence presented." Id. (internal quotation marks omitted). With these principles in mind, and for the reasons that follow, we affirm Brown's convictions.

### A.

As for the drug conspiracy count, the prosecution was required to prove that: "(1) an agreement to possess cocaine [base] with intent to distribute existed between two or more persons; (2) the defendant knew of the conspiracy; and (3) the defendant knowingly and voluntarily became a part of this conspiracy." Burgos, 94 F.3d at 857. Brown concedes proof of the first two elements, acknowledging that the evidence established that he, Kenny, and the Tate brothers all distributed crack in the Reid Park neighborhood, that he knew that Kenny and the Tate brothers were weight dealers who "dealt together as a unit," and that he was a frequent customer of Kenny (who would sometimes "front" drugs to Brown) and an occasional customer of Byron and Darius.

However, Brown challenges the sufficiency of the evidence on the third element of the conspiracy offense, contending that the prosecution proved only a conspiracy between Kenny and the Tate brothers, of which Brown was not a part. Brown points to evidence that Kenny and the Tate brothers grew up together, socialized together, pooled resources to purchase drugs, shared profits from their resale, and teamed together to retaliate against Brown for shooting at Byron in August 1999. According to Brown, he merely engaged in a buyer-seller relationship with Kenny, which, under our decision in United States v. Mills, does not equate Brown as a "coconspirator" of Kenny and the Tate brothers. See 995 F.2d 480,

9

485 (4th Cir. 1993) (recognizing "that there may be instances where one is merely a buyer or seller, but not a conspirator").[6]

We also recognized in Mills, however, that "evidence of a buy-sell transaction is at least relevant . . . on the issue of whether a conspiratorial relationship exists," and that such evidence, "when coupled with a substantial quantity of drugs, would support a reasonable inference that the parties were coconspirators." 995 F.2d at 485 n.1. Here, the evidence established that Brown purchased drugs from Kenny and, to a lesser extent, from Byron and Darius, over a period of at least two years. Kenny testified that, during that time period, he sold Brown a total of approximately 504 to 560 grams of crack, which is a substantial quantity of drugs. The conspiracy verdict is further supported by evidence that Brown was "fronted" drugs by Kenny to sell on the street, as well as by the expert testimony of BATF Agent Blacknall. See Burgos, 94 F.3d at 858 (observing that "[c]ircumstantial evidence tending to prove a conspiracy may consist of a defendant's relationship with other members of the conspiracy, the length of this association, the defendant's attitude and conduct, and the nature of the conspiracy" (internal quotation marks and alterations omitted)). In these circumstances, there was substantial evidence to establish that

_____

[6]Notably, the jury was instructed that evidence of a mere buyer-seller relationship would be insufficient to convict Brown on the drug conspiracy count, and that the prosecution was required to prove the existence of the single conspiracy alleged in the indictment, involving Brown, Kenny, and the Tate brothers.

Brown, Kenny, and the Tate brothers shared a common conspiratorial purpose of profiting from supplying crack to users in the Reid Park neighborhood. See id. (recognizing that "contemporary drug conspiracies can contemplate only a loosely-knit association of members linked only by their mutual interest in sustaining the overall enterprise of catering to the ultimate demands of a particular drug consumption market" (internal quotation marks and alterations omitted)). It is of no significant consequence that Brown's contacts with Kenny and the Tate brothers were related strictly to business, while Kenny and the Tate brothers were close friends and associates. One can be "a knowing and voluntary participant in the drug conspiracy, even though he might have operated at the perimeter." United States v. Wilson, 135 F.3d 291, 306-07 (4th Cir. 1998).

In summary, upon reviewing the evidence in the light most favorable to the prosecution, a reasonable trier of fact could have found Brown guilty on the drug conspiracy count. See Glasser, 315 U.S. at 80. Therefore, the district court properly denied Brown's motion for judgment of acquittal, and we affirm his conviction on that charge.

B.

The factual predicate for the firearm count was Brown's shooting at Byron on August 17, 1999, after Kenny sold Brown "bad dope." The district court instructed the jury that, in order to

11

convict Brown on the firearm count, it had to find that either: (1) Brown "knowingly used or carried a firearm . . . during and in relation to" the charged drug conspiracy; or (2) he knowingly "possessed a firearm in furtherance of" the conspiracy.[7]  The jury also was instructed to answer whether Brown discharged the firearm in connection with this offense.

Rather than challenging these instructions on appeal, Brown contends that the district court erred in denying his motion for judgment of acquittal on the firearm count.  Brown maintains that his conviction on this charge cannot be sustained under 18 U.S.C. § 924(c)(1) absent proof that his use or carrying of a firearm "facilitate[d]" the charged drug conspiracy, United States v. Patterson, 348 F.3d 218, 226 (7th Cir. 2003) (defining "in relation to"), or that his possession of a firearm "furthered, advanced, or helped forward" the conspiracy, United States v. Lomax, 293 F.3d 701, 705 (4th Cir. 2002) (discussing "in furtherance of"). According to Brown, the evidence supports only the conclusion that his shooting at Byron on August 17, 1999, hindered — rather than facilitated or furthered — the conspiracy between Brown, Kenny, and the Tate brothers.  That is, in shooting at Byron, "Brown made a unilateral decision to violently go after his other conspirators,

_____

[7]In instructing the jury, the court defined "in furtherance of," but did not define "during and in relation to."  Brown did not object to these instructions in the district court, and he does not challenge them on appeal.

12

an act which could only hinder the conspiracy, not further its goals." (Appellant's Br. at 22).

Even accepting Brown's framing of this issue as a challenge to the sufficiency of the evidence (rather than the substance of the instructions), his contention lacks merit. As the prosecution maintains, the jury was entitled to find that Brown shot at Byron to send a message to Kenny that he would not accept "bad dope." As a result, viewed in the light most favorable to the prosecution, the evidence supports the inference that Brown shot at Byron as "one way to ensure he received good quality crack in the future," and thus to facilitate or further the conspiracy. (Appellee's Br. at 21); see also Glasser, 315 U.S. at 80. The district court thus properly denied Brown's motion for judgment of acquittal on the firearm count, and we affirm his conviction on that charge.

III.

Finally, Brown challenges his sentence on various grounds. As explained below, we agree that his sentence was imposed in violation of the Sixth Amendment. See Booker, 125 S. Ct. at 746 (concluding that Sixth Amendment as construed in Blakely applies to Sentencing Guidelines). Accordingly, we vacate Brown's sentence and remand this matter for resentencing, without addressing Brown's other contentions of sentencing error.[8]

_____

[8]In his other sentencing contentions, Brown asserts that the court erred in: (1) applying the murder enhancement on the grouped

13

Because Brown raised his Sixth Amendment contention for the first time on appeal, it is subject to review for plain error only. See United States v. Hughes, No. 03-4172, 2005 WL 628224, at *5 (4th Cir. Mar. 16, 2005). As set forth in United States v. Olano, the plain error mandate is satisfied if: (1) there was error; (2) it was plain; and (3) it affected the defendant's substantial rights. 507 U.S. 725, 732 (1993). If these conditions are met, we may then exercise our discretion to notice the error, but only if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." Id. (internal quotation marks and alteration omitted). The Olano conditions are satisfied here.

First, the prison term imposed on Brown constituted error under Booker. See 125 S. Ct. at 755-56 (holding Sixth Amendment contravened when sentencing court, acting pursuant to Guidelines, imposes sentence greater than maximum authorized by facts found by jury alone). Under the then-mandatory Guidelines regime, the jury verdict supported an offense level of 32 on the grouped drug counts, resulting in a sentencing range of 135 to 168 months. However, the court's application of the murder cross-reference —

---

drug counts, in that, inter alia, the killing of Mason by Brown's coconspirators was not "relevant conduct" for which Brown can be held responsible under the Guidelines, see USSG § 1B1.3(a) (2002); (2) imposing the upward departure on the firearm count, even though the prosecution requested such departure only in the event that the court declined to apply the murder enhancement; and (3) justifying its drug quantity finding of 500 grams to 1.5 kilograms as the finding of the jury, which specified only that Brown's offenses involved 55 grams or more of crack.

14

predicated on facts related to Mason's murder that were not found by the jury — increased Brown's offense level to 43 and required a life sentence. Pursuant to <u>Booker</u>, the court erred in relying on its own fact-finding to impose a sentence on the grouped drug counts of more than 168 months. <u>See</u> <u>Hughes</u>, 2005 WL 628224, at *5 (recognizing that imposition of sentence, "in part based on facts found by the judge, . . . constituted error").[9]

Second, although Brown's Sixth Amendment contention was foreclosed by our precedent at the time of his sentencing, <u>Booker</u> has since "abrogated our previously settled law," rendering the error plain. <u>Hughes</u>, 2005 WL 628224, at *5. And third, the error was prejudicial, in that Brown's life sentence on the grouped drug counts was greater than the 168-month maximum authorized by the facts found by the jury alone. <u>See</u> <u>id.</u> at *5-6.

Finally, to affirm Brown's sentence despite the error would seriously affect the fairness, integrity, or public reputation of these judicial proceedings. In the wake of <u>Booker</u>, the Guidelines are to be treated as advisory (rather than mandatory), and sentences that fall within the statutorily prescribed range are reviewable only for reasonableness. <u>Hughes</u>, 2005 WL 628224, at *3 (citing <u>Booker</u>, 125 S. Ct. at 765-68). The record before us does

---

[9]Because the application of the murder enhancement on the grouped drug counts constituted Sixth Amendment error, we must vacate Brown's entire sentence. Therefore, we need not reach the issue of whether, as Brown contends, the imposition of the upward departure on the firearm count constituted similar error.

15

not indicate what sentence the court would have imposed on Brown had it exercised its discretion under 18 U.S.C. § 3553(a) and treated the Guidelines as merely advisory; although it is possible that Brown will receive the same sentence on remand, "[t]his possibility is not enough to dissuade us from noticing the error." Id. at *13.  We therefore vacate Brown's sentence, and remand for resentencing consistent with Booker and its progeny.

## IV.

Pursuant to the foregoing, we affirm Brown's convictions, vacate his sentence, and remand for resentencing.

AFFIRMED IN PART, VACATED IN PART,
AND REMANDED

16